**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Joseph JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1999.
Filed June 4, 1999.

Mark Scott–Sedley, Public Defender, Philadelphia, for appellant.

Thomas Dolgenos, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, JOHNSON and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 Appellant, Joseph Johnson, appeals from his February 27, 1998, judgment of sentence of three and one-half (3½) to ten (10) years' imprisonment imposed following his convictions of possession of a controlled substance and possession with intent to deliver.

¶ 2 The facts presented at appellant's jury trial established that on October 10, 1996, at approximately 11:25 a.m., Philadelphia Police Officer Christopher Foley observed appellant engage in a brief conversation with another male on a Philadelphia street corner. The male handed money to appellant and appellant reached into a plastic bag and retrieved small objects, which he handed to the man. Officer Foley, who was standing approximately six feet away, believed that he had just witnessed a drug transaction. Foley testified that, in his seven-year career, he had previously seen narcotics dealt out of the type of plastic bag used by appellant, he had personally made approximately 40 drug arrests in the area in question and the area was known to the police as a high drug sale area. Based on this knowledge and what he had seen, Foley, who was in plain clothes, approached appellant and identified himself as a police officer. Appellant clutched the plastic bag and ran.

Foley and his partner gave chase and observed appellant discard the plastic bag into a pile of debris. Appellant was quickly apprehended and the bag was found to contain fourteen heat-sealed packets of a substance later identified as heroin.

¶ 3 Prior to trial, appellant was released on his own recognizance, but with electronic monitoring. He also signed a subpoena ordering him to be present for trial on June 16, 1997. Sometime in April, however, appellant cut the monitoring bracelet from his ankle and failed to meet with his probation officer. When he failed to appear for trial, a bench warrant was issued and a search of area hospitals, custodial facilities and the home of his girlfriend failed to locate appellant. A subsequent bench warrant and attempts to locate appellant through voter registration and social security lists were also unsuccessful. On July 22, 1997, the court heard testimony from a probation officer that appellant had removed his ankle bracelet and that he could not be located. The court also heard testimony from a quarter sessions clerk regarding appellant's failures to appear for trial. Based on this testimony, the trial court determined to conduct appellant's trial in absentia. A jury was impaneled, testimony was taken and appellant was convicted.

¶ 4 On February 27, 1998, appellant appeared for sentencing. He said he had failed to appear for trial because he was on drugs and "really didn't think it was appropriate to come in." (N.T., 2/27/98, at 9.) After reviewing appellant's extensive criminal record, including fourteen arrests and nine convictions, and his repeated parole or probation violations, the court imposed sentence on the drug convictions. Finding that appellant "has no respect for legally constituted authority," the court also imposed a consecutive sentence of ninety (90) days for contempt based on appellant's failure to appear for trial (N.T. at 11).

¶ 5 On appeal, appellant presents two claims. First, in lengthy principal and

reply briefs, he argues the trial court's decision to try him in absentia violated his state and federal constitutional rights to be present at his own trial. In particular, appellant asserts his rights were violated "where it was not shown that he knew or should have known that his trial could proceed in his absence, and where there was no compelling reason for proceeding to trial without him." (Appellant's brief at 8.) The propriety of trials in absentia was considered by our Supreme Court in the 1992 case of *Commonwealth v. Sullens*, 533 Pa. 99, 619 A.2d 1349 (1992). Because we find *Sullens* controls our determination of this case, a detailed review of the Supreme Court's holding is necessary. In *Sullens*, like the instant case, a criminal defendant was notified of his trial date but failed to appear. The trial court decided to try Sullens in absentia based on the conclusion that his absence on the scheduled date was "without cause" within the meaning of Pa.R.Crim.P. 1117, **Presence of the Defendant**, which provides in pertinent part:

> (a) The defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule. The defendant's absence without cause shall not preclude proceeding with the trial including the return of the verdict.

Sullens was convicted in absentia. When he appeared at sentencing, he explained that he had not appeared for trial because he did not want to be found guilty. The trial court rejected Sullens' explanation and proceeded with sentencing.

¶ 6 On appeal, this Court reversed the conviction on the basis that Sullens should not have been tried in absentia. Specifically, we found that "an accused may not waive his [constitutional] right to be present at trial by failing to appear on the date scheduled for trial[.]" *Id.* at 101–02, 619 A.2d at 1350, *citing Commonwealth v. Sullens*, 407 Pa.Super. 650, 584 A.2d 1050

(1990) (unpublished Memorandum). Our conclusion was based on *Commonwealth v. Felton*, 224 Pa.Super. 398, 307 A.2d 51 (1973), which held the unauthorized absence of an accused after trial has commenced will not prevent the trial from continuing, but if the accused fails to appear for the commencement of trial, the trial may not begin in his absence. Following our reversal of Sullens' judgment of sentence, the Supreme Court granted allocatur and reversed. Writing for a four-to-two majority, Justice Flaherty began by noting that, although an accused has an absolute constitutional right to be present at trial, this right may be waived either expressly or implicitly by the accused's actions. This principle of waiver, the Court found, was embodied in Pa. R.Crim.P. 1117(a). Expressly rejecting the *Felton* distinction between absence before trial and absence during trial, the Supreme Court held "that when a defendant is absent without cause at the time his trial is scheduled to begin, he may be tried in absentia, as Pa.R.Crim.P. 1117(a) contemplates." *Id.* at 104, 619 A.2d at 1350. The Court reasoned:

> A contrary rule ... would be a travesty of justice. It would allow an accused at large upon bail to immobilize the commencement of a criminal trial and frustrate an already overtaxed judicial system until the trial date meets, if ever, with his pleasure and convenience. It would permit a defendant to play cat and mouse with the prosecution to delay the trial in an effort to discourage the appearance of prosecution witnesses.... A defendant has a right to his day in court, but he does not have the right unilaterally to select the day and hour.

*Id.*, *quoting Government of Virgin Islands v. Brown*, 507 F.2d 186, 189–90 (3d Cir., 1975).

¶ 7 There can be no question that *Sullens* compels the conclusion in this case that appellant was properly tried in absentia. As in *Sullens*, the record in the instant case indicates clearly that appellant

knew of his trial date and willfully failed to appear. *Id.* ("Although appellee characterizes the colloquy as reflecting 'considerable' doubt that he had received notice of trial, the record establishes that there was very little doubt indeed."). Appellant admitted as much at sentencing when he stated that he failed to "come in" for trial because he was on drugs and "didn't really think it was appropriate." Contrary to appellant's suggestion, there is no constitutional requirement that he be specifically advised that trial may be conducted in his absence if, knowing of the trial date, he fails to appear. Moreover, trials in absentia are expressly authorized by Pa. R.Crim.P. 1117(a), and the trial court need not, as appellant suggests, make and express a specific finding "of a compelling reason for proceeding to trial without him." Concern for the administration of justice, as emphasized by the *Sullens* court, is reason enough for the procedure sanctioned by Rule 1117(a).

¶ 8 Recognizing the difficulty that *Sullens* poses for his argument, appellant asserts that, for various reasons, we should not follow the Supreme Court's clear holding therein. First, he argues *Sullens* "analyzed the permissibility of trials in absentia under [Rule] 1117; conspicuously, the Court did not address constitutional limitations." (Appellant's brief at 19.) The clear implication of this claim is that the Supreme Court construed Rule 1117 in an unconstitutional manner. However, a review of *Sullens* indicates that, contrary to appellant's claim, the Supreme Court did in fact consider "constitutional limitations." The Court began its analysis by noting that the constitutional right to be present at trial may be waived either expressly or implicitly. Indeed, the Court held this constitutional principle was embodied in Rule 1117(a). Far from excluding constitutional considerations, the Supreme Court's holding emphasized that the rule merely codified the fundamental principle that the constitutional right to be present at trial may be waived in certain circumstances. Indeed, the cases cited by the Court as common law enunciations of the rule involved both the federal and state constitutions. *Id.* at 102, 619 A.2d at 1350, *citing Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (right to be present at trial under Sixth Amendment of United States Constitution may be waived); and *Commonwealth v. Diehl,* 378 Pa. 214, 107 A.2d 543 (1954) (right to be present at trial under Article I, Section 9, of Pennsylvania Constitution may be waived). Moreover, the Supreme Court recently has cited *Sullens* for the proposition that an accused may waive his "constitutional right pursuant to the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution to be present at every stage of a criminal trial." *Commonwealth v. Wilson,* 551 Pa. 593, 712 A.2d 735 (1998) (holding that a defendant who flees after the commencement of trial waives his right to be present). Thus, the text of *Sullens* and its subsequent construction indicate the Supreme Court's holding encompassed not only Rule 1117(a), but also considerations under both the federal and state constitutions.

¶ 9 *Sullens* has been applied on two occasions by panels of this Court to affirm judgments of sentence in factually-similar situations. In *Commonwealth v. King,* 695 A.2d 412 (Pa.Super.1997), the appellant failed to appear for trial four times in a seven-month period, although he knew of the times and dates set for trial. He was convicted in absentia. In affirming, we held:

> The guarantees of the United States and Pennsylvania Constitutions ensure an accused the right to fair and impartial proceedings. This concern for due process in our criminal justice system is tempered by the public's interest in the swift pursuit of justice. As such, the due process rights of the accused do not allow him to dictate the pace of his own trial by repeatedly absenting himself when his trial date is scheduled. Such actions mock our system of justice, and

cannot be tolerated if the public's interest is to be respected.

*Id.*; *see also id.* at .414 ("It is clear from his admission at sentencing that appellant knew of his trial date, but that he willfully decided to absent himself because he was scared of jail and was using drugs. As acknowledged by the Supreme Court [in *Sullens* ], an admission such as this, even if it occurs at sentencing, is sufficient to show that appellant had notice of his trial date but failed to appear for trial without cause.").

¶ 10  The same year, in *Commonwealth v. Bond*, 693 A.2d 220 (Pa.Super.1997), a panel of this Court upheld a trial in absentia where the appellant had fled before the commencement of trial. "By his actions," we held, "appellant has waived the right to challenge the proceedings and his sentence on the basis that it was imposed in his absence." *Id.* at 223. The *Bond* court also rejected the identical claim raised herein, namely, that an accused must be specifically informed that a trial might be conducted in absentia before he can knowingly and voluntarily waive his right under the federal and state constitutions to be present at trial.[1] These references to the holdings of *King* and *Bond* refute appellant's claim that, like the Supreme Court in *Sullens*, this Court ignored the constitutional provisions involved and based its decisions solely on Rule 1117(a).

¶ 11  Finally, appellant argues that *Sullens*, *King* and *Bond* have been rendered "invalid" by subsequent decisions of the United States and Pennsylvania Supreme Courts. In particular, he relies on *Crosby v. United States*, 506 U.S. 255, 113 S.Ct.

748, 122 L.Ed.2d 25 (1993), in which the United States Supreme Court stated in dicta that a defendant who flees after the commencement of trial is more likely to be aware that the trial might be conducted in absentia than a defendant who flees prior to trial. It is important to note, however, that the *Crosby* Court was construing Fed.R.Crim.P. 43, the express terms of which provide that trials in absentia are not permitted in federal court unless the defendant was present when the trial began. The Court did not reach the constitutional implications of trials in absentia. In fact, the Court expressly declined to address the question of whether the constitutional right to be present at trial may be waived "in other circumstances," i.e., where the defendant is not present when trial commences. 506 U.S. at 261, 113 S.Ct. at 752; *see also, Bond, supra* at 224 ("[T]he Supreme Court [in *Crosby* ] specifically declined to determine whether a defendant may knowingly waive his right to be present in other flight situations."). Moreover, federal courts have found the prohibition on trials in absentia contained in Rule 43 is more extensive than that contained in the federal constitution. *See e.g., United States v. Brown*, 571 F.2d 980, 986 (6th Cir., 1978) ("[T]he right of presence stated in [Rule 43] is more far-reaching than the right of presence protected by the Constitution."). Thus, *Crosby* does not assist the position advanced by appellant. In his exhaustive argument, appellant invokes everything from the extradition matter of Ira Einhorn and the legacy of William Penn to the landmark decisions of the United States Supreme Court in *Dred Scott v.*

---

1.  The court in *Bond* followed *Sullens* on the basis that it was "persuasive," but it stated that the Supreme Court's holding was not binding because it was a plurality opinion. Like other courts that have cited it, we do not read *Sullens* as a plurality opinion. Chief Justice Nix and Justices Larsen, Flaherty (the author), and Papadakos constituted the majority, and Justices Zappala and Cappy dissented. Justice Papadakos wrote a brief concurring opinion simply "to emphasize that no harm is done to a defendant whose case is

heard in his absence because good cause has not been shown to the trial judge for the absence when, in fact, good cause exists for the absence. At sentencing, when the defendant appears, if he can establish that he had good cause for his absence at trial, he would be entitled to a new trial." *Commonwealth v. Sullens*, 533 Pa. 99, 106, 619 A.2d 1349, 1353 (1992). This concurring opinion differs in no way from the majority holding, which Justice Papadakos expressly joined.

*Sanford*, 60 U.S. 393, 19 How. 393, 15 L.Ed. 691 (U.S. 1857), *Plessy v. Ferguson*, 163 U.S. 537, 16 S.Ct. 1138, 41 L.Ed. 256 (1896), and *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Whatever the relevance of these matters, the fact remains that the precise issue presented in this appeal has been the subject of a binding decision by our Supreme Court and two holdings by panels of this Court. We agree with the state of the law enunciated by these decisions, and we will continue to follow them unless and until the Supreme Court decides otherwise. Accordingly, we conclude that appellant's trial in absentia did not violate his constitutional rights.

■■■ ¶ 12 Appellant's second and final claim is that the trial court erred in denying the motion of his counsel to suppress physical evidence since the police had neither probable cause nor reasonable suspicion to initiate the stop that led to his arrest. In reviewing the decision of a suppression court, we must ascertain whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. *Commonwealth v. Gommer*, 445 Pa.Super. 571, 665 A.2d 1269 (1995). We will consider only the evidence of the Commonwealth and that defense evidence which remains. uncontradicted when read in the context of the entire record. *Commonwealth v. Leighty*, 693 A.2d 1324 (Pa.Super.1997).

¶ 13 Appellant's specific claim is that his abandonment of narcotics during the chase that preceded his arrest was coerced by an investigatory stop and seizure that was invalid under Article I, Section 8 of the Pennsylvania Constitution. Appellant cites *Commonwealth v. Matos*, 543 Pa. 449, 672 A.2d 769 (1996), in support of this argument. In *Matos*, our Supreme Court, rejecting the holding of the United States Supreme Court in *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), held that under the Pennsylvania Constitution "contraband discarded by a person fleeing a police officer are the fruits of an illegal 'seizure' where the police officer possessed neither 'probable cause' to arrest the individual nor reasonable suspicion to stop the individual." *Id.* at 451, 672 A.2d at 770. Applying the *Matos* standard to the instant case, it is clear the heroin discarded by appellant is the fruit of an illegal seizure unless Officer Foley had probable cause for an arrest or reasonable suspicion to conduct an investigatory stop.

■■■ ¶ 14 In order to justify an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. Reasonable suspicion must be based on specific and articulable facts, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and it must be assessed based upon the totality of the circumstances, *Commonwealth v. Wright*, 448 Pa.Super. 621, 672 A.2d 826 (1996). The fact that a suspect's behavior may be consistent with innocent behavior does not, standing alone, make detention and limited investigation illegal. *Commonwealth v. White*, 358 Pa.Super. 120, 516 A.2d 1211 (1986). Instead, the totality of the circumstances must be viewed through the eyes of a trained police officer, not an ordinary citizen. *Commonwealth v. Fink*, 700 A.2d 447 (Pa.Super.1997). Finally, although presence in an area known for drug trafficking is not enough to warrant a stop, *Commonwealth v. Kearney*, 411 Pa.Super. 274, 601 A.2d 346 (1992), and flight from police is insufficient to create a reasonable suspicion of criminal activity, *Commonwealth v. DeWitt*, 530 Pa. 299, 608 A.2d 1030 (1992), a combination of circumstances may justify a stop where each circumstance standing alone would not do so. *Commonwealth v. Moore*, 300 Pa.Super. 488, 446 A.2d 960 (1982).

■■■ ¶ 15 Our review of the suppression court record indicates Officer Foley and his partner possessed reasonable suspicion to suspect appellant was engaged in

**870**

criminal activity. Appellant was observed in an area known for high drug activity exchanging small objects from a plastic bag for cash. Officer Foley, who was a mere six feet away at the time of the transaction, had made many arrests in the area and he had seen drugs dealt from plastic bags of the type used by appellant. As the officer approached and identified himself, appellant fled. These facts, apparent at the inception of the pursuit of appellant, were sufficient to give the police a reasonable belief that criminal activity was afoot, despite the fact that each circumstance, standing alone, would not warrant a stop. In this regard, we rely on our recent decision in *Commonwealth v. Riley,* 715 A.2d 1131 (Pa.Super.1998), in which we found the following:

> Officer Jenkins testified that he observed Appellant in an area known for high drug activity. Appellant and two individuals stepped from the sidewalk and into an alleyway. Appellant was showing the two individuals something he was holding inside of a napkin. In addition, Appellant held another napkin in his other hand. Officer Jenkins also testified that his prior experience and familiarity with the drug trade in Harrisburg provided him with knowledge that, in the area, drugs are trafficked using napkins. Further, when Appellant saw Officer Jenkins exit the unmarked car, Appellant abruptly discarded the first napkin and began to leave the area. After Officer Jenkins announced himself, Appellant ran from the scene. At this point, which was at the inception of the pursuit, Officer Jenkins possessed sufficient articulable facts amounting to suspicious conduct on the part of Appellant and a reasonable belief that some type of criminal activity was afoot.

> While the facts discussed above individually above would not amount to reasonable suspicion, when viewed in the totality of the circumstances, the aggregate of the facts is more than sufficient to reach this threshold.

 *Id.* at 1135; *see also Commonwealth v. Pizarro,* 723 A.2d 675 (Pa.Super.1998) (defendant's dealing of unidentified objects from a brown paper bag in a high drug area and his subsequent flight upon police approach contributed to reasonable suspicion for investigatory stop); and *In the Interest of B.C.,* 453 Pa.Super. 294, 683 A.2d 919 (1996) (defendant's removal from his waistband and display of plastic baggie with orange tint in known drug area held sufficient basis of reasonable suspicion for investigatory stop). Since the police possessed reasonable suspicion, the seizure in the instant case was lawful. As a result, appellant's decision to discard the drugs he was dealing was not coerced and the trial court properly refused suppression. *Riley, supra.* Having rejected appellant's claims on appeal, we affirm the February 27, 1998 judgment of sentence.

¶ 16 Judgment of sentence affirmed.