COMMONWEALTH of Pennsylvania,
Appellant

v.

Mary E. HAYES, Appellee.

Superior Court of Pennsylvania.

Submitted Oct. 31, 2005.

Filed May 1, 2006.

Karen E. Kuebler, Assistant District Attorney, Bellefonte, for Commonwealth, appellant.

Stacy P. Miller, State College, for appellee.

BEFORE: STEVENS, BOWES, and McCAFFERY, JJ.

OPINION BY McCAFFERY, J.:

¶ 1 In this appeal, the Commonwealth asks us to determine whether the trial court erred in granting Appellee's omnibus pre-trial motion to suppress evidence and statements and *sua sponte* dismissing the charge of furnishing alcohol to minors.[1] Upon review, we reverse and remand for trial.

¶ 2 The relevant facts and procedural history of this case, as summarized by the suppression court and gleaned from the certified record, are as follows. On October 8, 2004, Detective John Aston of the State College Police Department was on duty as part of a "cops and shop" detail at the Wine & Spirits Store on West Hamilton Avenue in State College, Pennsylvania. (Notes of Testimony ("N.T."), 12/1/04, at 1). Detective Aston observed a silver vehicle, occupied by four (4) females, park directly in front of the liquor store. The detective watched the females engage in conversation for a few minutes, but did not at that point suspect that anyone in the vehicle was underage. (*Id.* at 2, 5). While the detective was watching, the driver passed something to the front seat passenger, later identified as Appellee, Mary E. Hayes, who placed the item into her purse and began walking away from the car. (*Id.* at 2). Detective Aston believed the item passed to Appellee was money be-

cause it looked like a "rolled up pile of bills or some type of U.S. Currency and when [Appellee] took it, she placed that item right into her purse".[2] (*Id.* at 3). Appellee walked a short distance, then stopped, turned around and looked back at the vehicle and said "apple, apple". Someone in the vehicle responded and Appellee said "oh watermelon". Appellee then walked into the liquor store where Detective Aston observed her purchase two bottles of "some type of liquid" which he assumed to be liquor. Appellee left the store carrying the bottles in an opaque plastic bag, went over to the vehicle and placed the bottles on the back seat before she resumed her front passenger seat. (*Id.*). At that point, Detective Aston could not tell definitively whether the bottles contained alcoholic beverages, although he thought that they "looked like alcohol".[3] (*Id.* at 3, 10).

¶ 3 Detective Aston and the other officers involved in the detail then stopped the vehicle as it was in the process of backing out of the parking space and asked all of the occupants to get out. (*Id.* at 4). Detective Aston spoke with Appellee, examined her Pennsylvania Driver's License, and thereby determined that she was over the age of twenty-one (21). (*Id.*). When Detective Aston explained to Appellee what he had observed, Appellee admitted to receiving money from the passengers in the car, and stated that she was referring to Smirnoff vodka when she said "apple" and "watermelon". (*Id.*). Detective Aston also spoke with the driver, Rebecca Ring-

---

1. 18 Pa.C.S.A. § 6310.1.

2. On cross-examination, Detective Aston did admit that the item could also have been a lighter, as it was dark and the item was about that size. (N.T. at 8).

3. Detective Aston testified that "I'm using [Appellee's] statement [of whether the bottle

was to be apple or watermelon] based on the fact [that] she goes into the liquor store with money that was given to her and goes to the counter and pays for two bottles of what I believe to be alcohol. So yes, I suspected it to be alcohol. . . . It is based on everything that I had observed up to that point that was alcohol yes." [sic] (N.T. at 11–12).

wood, and determined that she was underage. (*Id.* at 5). Ms. Ringwood told Detective Aston that she had picked up Appellee and driven to the liquor store, and admitted that she had provided Appellee with $50.00 in order for her to purchase vodka and rum for Ms. Ringwood and her friends who were also underage. (*Id.* at 5, 22–23).

¶ 4 Based on his ten (10) years of experience in investigating cases of furnishing alcohol to minors, Detective Aston began to suspect that Ms. Ringwood was underage when he saw her hand what appeared to be money to Appellee while parked in front of the liquor store: "[i]n all my investigations, those that hand money to someone in a liquor store, when they could hand it at any other time during the day, they do it right before they walk into the liquor store, always equates to that person being under 21 and the other person being over 21". (*Id.* at 6).

¶ 5 As a result of Detective Aston's investigation on October 9, 2004, Appellee was charged with furnishing alcohol to minors. Appellee filed an omnibus pre-trial motion to suppress, and it was agreed at the hearing thereon that the facts would be established by reference to the transcript of the preliminary hearing which had been held on December 1, 2004. The suppression court ordered the Commonwealth and the defense to submit proposed findings of fact, conclusions of law and briefs. After reviewing the submissions, the suppression court entered an order granting Appellee's omnibus pre-trial motion to suppress and, *sua sponte*, dismissed the charge against Appellee. This timely appeal ensued in which the Commonwealth raises the following issues for our review:

1. DID THE TRIAL COURT ERR IN GRANTING APPELLEE'S OMNIBUS PRE–TRIAL MOTION TO SUPPRESS?

2. DID THE TRIAL COURT ERR IN *SUA SPONTE* ORDERING CHARGES TO BE DISMISSED AFTER GRANTING APPELLEE'S OMNIBUS PRE–TRIAL MOTION TO SUPPRESS?

(Commonwealth's Brief at 4).

¶ 6 Specifically, the Commonwealth argues that the trial court erred in granting Appellee's motion to suppress because Detective Aston had articulable and adequate reasons for his belief that a crime might be occurring, sufficient to support an investigative detention in this case. The Commonwealth also contends that the trial court erred in *sua sponte* dismissing the charges against Appellee, as the proper remedy for unlawful procurement of evidence is suppression of that evidence and its exclusion at trial, not dismissal of the charges, which deprives the Commonwealth of any possibility of proving its case by other legally obtained evidence which might exist.[4] (Commonwealth's Brief at 8–10). We agree.

¶ 7 Our standard of review when reviewing the granting of a suppression motion is well-established:

As an appellate court reviewing the ruling of a suppression court, we consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. We must first ascertain whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions

4. Because of our disposition of the Commonwealth's first issue on appeal, we do not reach this second issue.

drawn therefrom. The suppression court's factual findings are binding on us and we may reverse only if the legal conclusions drawn therefrom are erroneous.

*Commonwealth v. Tucker,* 883 A.2d 625, 629 (Pa.Super.2005). In *Commonwealth v. Barber,*[5] we elucidated the varying degrees of suspicion required to justify the different levels of interactions between a police officer and a citizen:

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Commonwealth v. Blair,* 394 Pa.Super. 207, 575 A.2d 593, 596 (1990). To secure this right, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive.
>
> The first of these is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an 'investigative detention,' must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest, or 'custodial detention,' must be supported by probable cause.

*Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043, 1047 (1995) (citations and footnote omitted). See *Commonwealth v. Sands,* 887 A.2d 261 (Pa.Super.2005).

An investigative detention occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. See *Ellis,* supra. Such a detention constitutes a seizure of a person and thus activates the protections of the Fourth Amendment and the requirements of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

*Barber, supra,* at ¶ 592. This Court summarized the prerequisites for a police officer to conduct a valid investigatory stop and detention as follows:

> In the landmark criminal case, *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that police may stop and frisk a person where they have reasonable suspicion that criminal activity is afoot. *See also* [ ] *Commonwealth v. Blair,* 860 A.2d 567, 573 (Pa.Super.2004) ("[A] police officer may, short of an arrest, conduct an investigative detention if he has a reasonable suspicion, based upon specific and articulable facts, that criminality is afoot."). . . .
>
> The central question into whether a stop is reasonable is an objective one and centers on whether "the facts available to the officer at the moment of the [intrusion] 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Blair,* 860 A.2d at 573 (quoting *Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889) (brackets in original). In making this inquiry, the totality of the circumstances must be considered. *See id.* In addition, "we must give 'due weight . . . to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience.'" *Commonwealth v. Rogers,* 578 Pa. 127, 134, 849 A.2d 1185, 1189 (2004) (quoting *Commonwealth v. Cook,* 558 Pa. 50, 57, 735 A.2d 673, 676 (1999)) (brackets in original). Of course,

**5.** 889 A.2d 587 (Pa.Super.2005).

the inquiry into the establishment of *reasonable suspicion requires a lesser* showing in terms of quantity, content, and reliability than that which would be needed to establish probable cause. *See Blair,* 860 A.2d at 573.

*Tucker, supra,* at 629–630 (emphasis added). The fact that a suspect's behavior may be consistent with innocent behavior does not, standing alone, make detention and limited investigation illegal. *Commonwealth v. Johnson,* 734 A.2d 864, 869 (Pa.Super.1999) (citation omitted). Instead, the totality of the circumstances must be viewed through the eyes of a trained police officer, not an ordinary citizen, and a combination of circumstances may justify a stop where each circumstance standing alone would not do so. *Id.*

¶ 8 The offense of furnishing liquor to minors is defined, in pertinent part, as follows:

**§ 6310.1. Selling or furnishing liquor or malt or brewed beverages to minors**

(a) Offense defined.—Except as provided in subsection (b), a person commits a misdemeanor of the third degree if he intentionally and knowingly sells or intentionally and knowingly furnishes, or purchases with the intent to sell or furnish, any liquor or malt or brewed beverages to a person who is less than 21 years of age.

\* \* \* \* \* \*

18 Pa.C.S.A. § 6310.1.

¶ 9 In the case *sub judice,* the Commonwealth does not dispute that Detective Aston's interaction with Appellee was an investigative detention after he had initiated a stop of the vehicle in which Appellee was riding in order to investigate whether criminal activity was afoot. However, Appellee contends that she was subjected to "custodial detention", triggering the requirement that *Miranda* warnings

be administered and requiring predicate probable cause. (Appellee's Brief at 14). Since Detective Aston only detained Appellee temporarily by a show of authority for investigative purposes, we determine that the interaction did not amount to the functional equivalent of arrest such as to constitute "custodial detention". Accordingly, Detective Aston only had to harbor a reasonable suspicion that Appellee was engaged in unlawful activity for an investigatory detention to be lawful. Our thorough review of the record indicates this criterion was satisfied here.

¶ 10 Instantly, Detective Aston observed a vehicle with Appellee and three others inside park directly in front of a liquor store, and he then saw the driver pass something to Appellee which the detective thought was money. It was at this point that Detective Aston formed the suspicion that the driver was probably underage "based on [the detective's] past experience with furnishings". (N.T. at 5). This detective was a ten-year veteran of the police department's division for investigating furnishing alcohol to minors, whose professional experience had proved to him that the handing over of money to someone right before that person walks into a liquor store was always a strong indicator that the person handing over the money was underage and the person accepting the money was over twenty-one (21). (*Id.* at 6). Further, Appellee began walking towards the liquor store, but turned back before she went inside and yelled to the others in the vehicle "apple, apple" and then "oh watermelon". Appellee then entered the liquor store and purchased two bottles of what Detective Aston believed to be alcohol based on their appearance and the place of purchase.

¶ 11 In determining whether Detective Aston possessed reasonable suspicion, we *must accord due weight "to the specific*

reasonable inferences [he] is entitled to draw from the facts in light of his experience." *Tucker, supra,* at 629–930. All of the detective's observations were consistent with the furnishing of alcohol to minors, and the totality of the circumstances are to be viewed through the eyes of a trained officer with the detective's professional experience. *Id.* Although Appellee's behavior may also have been consistent with innocent behavior, that alone does not make the investigatory detention unlawful. *Johnson, supra* at 869. It is *per se* reasonable for one to assume that when a person goes into a liquor store in Pennsylvania and emerges with bottles, that person has purchased alcohol. Therefore, we determine that the rational and logical inferences which Detective Aston drew from the aforementioned facts, based on his professional experience, warranted his forming a reasonable suspicion that some criminal activity was afoot. The suppression court erred in concluding that Detective Aston lacked reasonable suspicion to stop Appellee.

¶ 12 Based on our review of the record and for the reasons set forth above, we hold that Detective Aston did possess reasonable suspicion that Appellee was furnishing alcohol to minors. Accordingly, because the stop was lawful, the suppression court erred in granting Appellee's motion to suppress.

¶ 13 Order reversed. Case remanded for trial. Jurisdiction relinquished.

¶ 14 BOWES, J. files a Dissenting Opinion.

DISSENTING OPINION BY BOWES, J.:

¶ 1 I respectfully dissent from the majority's rejection of Appellee's claim that her incriminating remarks were improperly obtained in violation of her *Miranda* rights. The majority maintains that *Miranda* warnings were not required, reasoning that "[s]ince Detective Aston only detained Appellee temporarily by a show of authority for investigative purposes, we determine that the interaction did not amount to the functional equivalent of arrest such as to constitute 'custodial detention.'" Majority opinion at 8. The majority has not applied the correct standard in assessing when *Miranda* warnings are required.

¶ 2 The administration of *Miranda* warnings does not depend on whether a person has been detained for investigative purposes. Instead, a "custodial interrogation" occurs and *Miranda* warnings must be given when "the person is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted." *Commonwealth v. Sepulveda,* 579 Pa. 217, 228, 855 A.2d 783, 790 (2004). Furthermore, "The test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer, but rather, focuses on whether the individual being interrogated reasonably believes his freedom of action is being restricted." *Id.* at 228–229, 855 A.2d 783, 885 A.2d at 790.

¶ 3 Herein, the record establishes beyond question that Appellee's freedom of action was restricted significantly and that she was not free to leave when the questioning occurred. After Appellee exited the store, she placed her purchase in the car and re-entered it, and the car began to exit the parking lot. Detective Aston and several other police officers stopped the car and ordered the occupants to return to the parking lot and exit the car. N.T. Preliminary Hearing at 1, 12. The occupants of the car were separated and moved. *Id.* at 12. Detective Aston placed Appellee in front of the vehicle and was

informed by other officers that the other occupants were underage. Detective Aston then began to question Appellee in order to obtain her admission that she had purchased the liquor for the other occupants of the car. Detective Aston admitted that he did not give her *Miranda* warnings. *Id.* at 14. He also specifically admitted that Appellee was not free to leave when the interrogation began. *Id.* at 15.

 ¶ 4 Thus, Appellee's car was stopped by a show of police authority and by a number of officers. She was ordered from her car and then separated and moved. She never was informed that she was free to leave or otherwise refuse to answer questions. She objectively was subjected to a custodial interrogation. *In the Interest of K.Q.M.*, 873 A.2d 752 (Pa.Super.2005); *see also Commonwealth v. Donaldson,* 786 A.2d 279 (Pa.Super.2001) (when suspect's car was stopped and suspect was ordered from car and subjected to interrogation, he was not free to leave). Furthermore, Detective Aston specifically admitted that Appellee was not free to leave when he began his questioning. Thus, both objectively and subjectively, Appellee was not free to leave, and a custodial detention occurred for purposes of *Miranda.*

It is well-established that the prosecution may not use any statements resulting from the custodial interrogation of a defendant unless he was first informed of his right against self incrimination and his right [to] counsel. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Statements made during custodial interrogation are by their very nature involuntary, unless the accused is first advised of his *Miranda* rights and permitted to exercise these rights. *Commonwealth v. Nester,* 551 Pa. 157, 709 A.2d 879 (1998) (citation omitted) . . . .

*Commonwealth v. Gaul,* 867 A.2d 557, 559 (Pa.Super.2005). Hence, I would affirm the suppression court's decision[6] and agree that Appellee's incriminating statements should have been suppressed, albeit on different grounds.[7]

---

6. I agree with the Commonwealth that the suppression court had authority to suppress Appellee's incriminating statements but should not have dismissed these charges.

7. If a trial court's decision is correct, it can be affirmed by the appellate court on any basis. *Devine v. Hutt,* 863 A.2d 1160 (Pa.Super.2004).