J-S19026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JOSEPH GRIES | : | |
| Appellant | : | No. 1661 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 10, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0001564-2016

BEFORE:  BOWES, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY McCAFFERY, J.:      **FILED MAY 19, 2020**

  Joseph Gries (Appellant) appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his jury convictions of involuntary deviate sexual intercourse[1] (IDSI) and related offenses.  Appellant avers: (1) the trial court erred in commencing trial *in absentia* and in denying his mid-trial motion for a continuance; and (2) this Court should vacate his sexually violent predator (SVP) designation and registration requirements under SORNA,[2] pursuant to this Court's decision in ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa. Super. 2017).  We note that while this appeal was pending, ***Butler*** was reversed by the Pennsylvania Supreme Court.  ***See***

_____

[1] 18 Pa.C.S. § 3123(a)(7) (victim less than 16 years of age).

[2] Pennsylvania's Sex Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.10 to 9799.75.  ***See*** 42 Pa.C.S. § 9799.24 (governing SVP assessments).

*Commonwealth v. Butler*, ___ A.3d ___, 2020 WL 1466299 (Pa. Mar. 26, 2020). We affirm.

Appellant lived with his minor daughter, A.G. (Daughter); his wife, S.G. (Wife); and Wife's biological minor daughter, N.S. (Step-Daughter). In 2015, Appellant was charged with numerous offenses for his years-long physical abuse of Daughter and physical and sexual abuse of Step-Daughter.[3] Pertinent to Appellant's SVP designation, these offenses were allegedly committed after December 12, 2012, the effective date of SORNA. *See* Commonwealth's Brief at 18.

A jury trial was scheduled to commence on the morning of September 6, 2016. The Commonwealth and Appellant's attorney appeared, but Appellant, who "previously appeared at all other proceedings," did not.[4] Trial Ct. Op. at 2. The Commonwealth averred it had "made tremendous arrangements" for trial, including bearing travel expenses for two out-of-state

_____

[3] Appellant was also charged with rape, 18 Pa.C.S. § 3121(a)(2), and related offenses for crimes committed against a young woman living in their home. The Commonwealth ultimately withdrew these charges because the woman's subsequent health issues prevented her from traveling to the preliminary hearing. N.T., 9/7/16, at 23. The Commonwealth also charged Appellant with two counts of aggravated assault, 18 Pa.C.S. § 2702(a)(4), for an incident involving Daughter's mother (Appellant's ex-girlfriend). N.T., 9/6/16, at 8. The jury found him not guilty of these charges.

[4] The Honorable Diane Gibbons presided over the September 6 and 7, 2016, hearings. The jury trial commenced the following day, September 8th, and was conducted by the Honorable Wallace Bateman, Jr., President Judge. Appellant was represented at both by Michael Applebaum, Esquire. He is represented on appeal by the Bucks County Public Defender's Office.

witnesses, who were "*en* route as we speak." N.T., 9/6/16, at 3. Appellant's counsel confirmed to the trial court that Appellant knew the trial date, and further explained that despite repeated attempts to contact him, counsel had not heard from Appellant since August 12, 2016, when counsel told him his request for a trial continuance was denied. ***See id.*** at 4; N.T., 9/7/16, at 12, 86. Rather than proceeding to trial, the trial court conducted a hearing on whether Appellant should be tried *in absentia*. "Additionally, a bench warrant was issued and bail was forfeited." Trial Ct. Op. at 2.

After a recess, the Commonwealth called Appellant's wife as a witness. While Daughter and Step-Daughter were removed from the home, Wife and Appellant were living together. N.T., 9/6/16, at 25; N.T., 9/7/16, at 48. Wife testified she and Appellant were aware trial was scheduled to commence that day, having received notice in the mail. N.T., 9/6/16, at 25, 27, 29. The trial court summarized: "[Wife] was crying and emotional. [She] stated that Appellant was in the home the morning of August 26, 2016 but when she came home from work, [he] had disappeared and had left a letter for her." Trial Ct. Op. at 2-3, *citing* N.T., 9/6/16, at 20, 25. Appellant's letter, which was introduced at the hearing, claimed he previously served 4 years' imprisonment "for something [he] didn't do," and he could not "do that twice" and "let this lawyer throw [him] under the bus and serve prison time for crimes [Appellant and Wife both knew he] didn't commit." Trial Ct. Op. at 2 (citation omitted).

However, Wife then testified Appellant called her at 9:00 a.m. that morning, September 6, 2016, but they did not talk about the trial. N.T., 9/6/16, at 30-32. Wife initially denied knowing Appellant's whereabouts, but later in the proceeding, admitted Appellant told her he was in California. *Id.* at 38, 72. Additionally, Wife acknowledged Appellant had sold items — "two pickup trucks, a construction trailer, a camper, construction tools, and a large screen television" — but denied it was with an intention to flee. Trial Ct. Op. at 3, *citing* N.T., 9/6/16, at 41-44. Nevertheless, "[i]t came to light that Appellant was self-employed as a contractor and that selling his construction equipment would make Appellant unable to perform his duties as a contractor." *Id.* at 3. The trial court adjourned for the day to give Appellant the opportunity to appear the next day or, if he were out of the jurisdiction, to surrender to local police. N.T., 9/6/16, at 80.

The next day, September 7, 2016, Appellant's counsel informed the trial court he sent a text message to Appellant advising "he should return for trial [as the court] was more than likely to try him *in absentia*." N.T., 9/7/16, at 9. Wife now testified Appellant's girlfriend (Girlfriend) was also living with her and Appellant. *Id.* at 48, 77; Trial Ct. Op. at 3 n.14. Wife further stated that the previous evening, she met with the assistant district attorney and the investigating Bristol Township Police Detective, and now "realized [she was] a victim in this whole situation for a very long time and did not realize." N.T., 9/7/16, at 44. Wife admitted she was not truthful at the prior day's

- 4 -

proceeding, and acknowledged she "played a huge role in assisting [Appellant

get] away from this criminal prosecution." *Id.*

The trial court summarized:

Through questioning by the Commonwealth, it came to light that [Wife] knew that Appellant planned on writing a letter and the purpose of this letter was for [Wife] to show to anyone who came looking for Appellant. [Wife] testified that on August 12, 2016, [the day Appellant's counsel told Appellant there would be no trial continuance, Wife] helped Appellant and [G]irlfriend . . . to flee. [Wife, Girlfriend,] and Appellant went to Wal-Mart . . . to purchase a duffel bag, tent, and other necessities to hitchhike. [Wife] was present when [Girlfriend] and Appellant packed their bags with necessities and military ready meal packs.

[The following day, August 13, 2016,[5] Wife, Girlfriend] and Appellant drove [to] the Flying J, a truck stop in New Jersey. [Wife] testified [this] was the drop-off point where [Girlfriend] and Appellant would get a ride from a trucker to their future destination. Contrary to what [Wife] testified to the previous day, Appellant had $300 . . . on his person from selling the large screen television and construction equipment on Craigslist.

Trial Ct. Op. at 3-4, *citing* N.T., 9/7/16, at 49-51, 55-57 (footnote omitted).

Wife stated that "[i]n order to support Appellant and [Girlfriend] while he was

on the run," she sent them money by wire transfer through Wal-Mart: $250

to Maryland on August 16, 2016; and $1,300 — raised from Wife's selling tools

and a television at Appellant's direction — to North Carolina on August 23rd.

Trial Ct. Op. at 4, *citing* N.T., 9/7/16, at 57, 60.

[Wife] transferred the money in [Girlfriend's] name because she had identification[.] Appellant purposefully left his identification at his home in Croydon, Pennsylvania so that if he came in contact

---

[5] N.T., 9/7/16, at 58.

with law enforcement, they would not know about his arrest warrant.

Trial Ct. Op. at 4, *citing* N.T., 9/7/16, at 64, 71.

Wife further testified to the following: three days earlier, Appellant told her he was in California, but she did not know where he currently was. N.T., 9/7/16, at 73, 76. The prior day, September 6, 2016, Wife was in telephone contact with Appellant and "update[ed] him throughout the day." *Id.* at 72. Finally, the previous evening, Appellant called Wife's cell phone multiple times, but she did not respond and left her phone in the detective's possession. *Id.* at 72.

Appellant's cell phone number, with which Wife was communicating with him, was the same number Appellant's attorney repeatedly called and texted. N.T., 9/7/16, at 14, 73. Appellant's counsel did not object to any of Wife's testimony and pertinently, stated he would not "object to any leading questions that helps move this along." *Id.* at 54, 65. In closing argument, Appellant's counsel conceded "it appears as though [Appellant] knew he had a date and decided not to participate." *Id.* at 86.

The trial court found the Commonwealth established by a preponderance of the evidence that Appellant knew the date of his trial but failed to appear without any good cause. The court further found the Commonwealth bore "great expense" for out-of-state witnesses; the particular allegations and length of this prosecution necessitated that trial proceed; and if trial were continued, there was no reason to believe Appellant would be

apprehended. N.T., 9/7/16, at 87-90; Trial Ct. Op. at 5. The court thus concluded Appellant would be tried *in absentia*.

The jury trial commenced the next day, September 8, 2016, and the Commonwealth called Step-Daughter to testify. On September 9th, the trial court was informed that Appellant was apprehended in California. Appellant's counsel moved for a continuance of trial. The court denied this request, reasoning Appellant had purposefully absented himself from the proceedings.

The jury found Appellant guilty of one count each of IDSI of a victim less than 16 years old, aggravated indecent assault of a victim less than 13 years old, aggravated indecent assault of a victim less than 16 years old, indecent assault of a victim less than 13 years old, and corruption of minors;[6] two counts each of recklessly endangering another person and endangering the welfare of a child;[7] and four counts of simple assault.[8]

On February 10, 2017, the trial court determined Appellant was an SVP under SORNA. At the same hearing, the court imposed an aggregate sentence of 25 to 50 years' imprisonment. Following the reinstatement of his direct appeal rights *nunc pro tunc*, Appellant filed a notice of appeal on June 7,

_____

[6] 18 Pa.C.S. §§ 3123(a)(7), 3125(a)(7)-(8), 6301(a)(1)(ii).

[7] 18 Pa.C.S. §§ 2705, 4304(a)(1).

[8] 18 Pa.C.S. § 2701(a)(1), (3).

2019.[9] Thereafter, he complied with the trial court's order to file a Pa.R.A.P.

1925(b) statement of errors complained of on appeal.

Appellant presents the following issues for our review:[10]

[1.] Did the trial court err in allowing Appellant to be tried *in absentia*?

[2.] Did the trial court err in refusing to grant a continuance to allow Appellant to be present at his trial?

[3.] Did the trial court err in designating Appellant as a sexually violent predator, as the sexually violent predator designation is unconstitutional as the proof provisions set forth in 42 Pa.C.S.A. § 9799.24 are unconstitutional?

[4.] Did the trial court err in requiring Appellant to register pursuant to [SORNA], as the registration provisions constitute punishment under Article I, § 17 of the Pennsylvania Constitution and the corresponding provisions of the United States Constitution?

Appellant's Brief at 5-6.

In his first issue, Appellant avers the trial court erred in conducting his

jury trial *in absentia*. We first address his claims that: the prosecutor

repeatedly asked leading questions; Wife's testimony was based on protected

marital communications; and the Commonwealth discussed facts about his

_____

[9] Appellant filed a timely *pro se* petition for relief on February 2, 2018, under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. The trial court appointed counsel, who filed an amended petition on January 29, 2019. With no objection from the Commonwealth, the trial court reinstated Appellant's direct appeal rights *nunc pro tunc* on May 9, 2019.

[10] We have reordered Appellant's issues.

"son"[11] that were "highly prejudicial and contained allegations which were inflammatory and utterly irrelevant."  Appellant's Brief at 21, 27.  We conclude these arguments are waived because they were not raised before the trial court.  *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

In further support of his claim, Appellant cites decisions in which the defendants "repeatedly failed to appear for trial" or "numerous bench warrants [were] issued."  Appellant's Brief at 20, *citing*, *inter alia*, **Commonwealth v. Johnson**, 734 A.2d 864 (Pa. Super. 1999); **Commonwealth v. King**, 695 A.2d 412 (Pa. Super. 1997).  Appellant then distinguishes the instant case, pointing out he appeared for all prior court proceedings and the trial court issued only one bench warrant for his failure to appear.  Appellant also argues that at the September 6 and 7, 2019, hearings, Wife "admitted to perjuring herself" and gave "numerous contradictory and flat-out untruthful statements."  Appellant's Brief at 20-21.  No relief is due

The decision to proceed to trial with the defendant *in absentia* "remains within the discretion of the trial court."  **Commonwealth v. Wilson**, 712 A.2d 735, 739 (Pa. 1998).  "Discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the

---

[11] The Commonwealth stated this individual — whom Appellant characterizes as his son — was Step-Daughter's half-brother and had no biological relation to Appellant.  N.T., 9/7/16, at 35.

result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Commonwealth v. Pantano*, 836 A.2d 948, 950 (Pa. Super. 2003) (citation omitted).

> Pursuant to Article I, § 9 of the Pennsylvania Constitution, and the Sixth Amendment of the federal constitution . . . defendants have the right to be present during their criminal trial.[ ] This right, however, is not absolute. "In non-capital cases, a defendant may, by his actions, waive this right expressly or implicitly." [A]bsenting oneself from . . . trial [does] not violate a person's jury trial rights.

*Commonwealth v. Kelly*, 78 A.3d 1136, 1141 (Pa. Super. 2013) (citations omitted). Furthermore, Pennsylvania Rule of Criminal Procedure 602(A) provides generally:

> The defendant shall be present at every stage of the trial . . . . The defendant's absence without cause at the time scheduled for the start of trial or during trial shall not preclude proceeding with the trial, including the return of the verdict and the imposition of sentence.

Pa.R.Crim.P. 602(A).

> The Commonwealth bears the burden of proving
>
> by a preponderance of the evidence that [a defendant] was absent without cause. In determining whether cause exists . . . "when a defendant is unaware of the charges against him, unaware of the establishment of his trial date or is absent involuntarily, he is not absent 'without cause' and therefore cannot be tried *in absentia*."

*Kelly*, 78 A.3d at 1143 (citation omitted).

> Trials *in absentia* have been upheld where the defendant fails to appear for trial without explanation or absents himself in order to avoid the jurisdiction of the trial court. . . .
>
> There is no question that a trial court has both the authority, as well as the need, to run efficiently.

***Pantano***, 836 A.2d at 950 (citations omitted). Furthermore, "[b]y voluntarily refusing to remain in contact with counsel, a presumption arises that [a defendant] knowingly sought to avoid being tried . . . ." ***Kelly***, 78 A.3d at 1144. Finally, we note "appellate courts do not act as fact finders, since to do so 'would require an assessment of the credibility of the testimony and that is clearly not our function.'" ***Commonwealth v. Freeman***, 827 A.2d 385, 393-94 (Pa. 2003) (citations omitted).

In deciding to conduct trial in Appellant's absence, the trial court found the following: Appellant knew the date of his trial, yet did not appear, and he had no good cause. N.T., 9/7/16, at 87; Trial Ct. Op. at 5. The Commonwealth incurred "great expense" to ensure trial witnesses would be present; "this case involves abuse of children, which is . . . traumatic," Appellant's alleged abuse of the minor girls had "been going on for an extended period of time," the prosecution had likewise "gone on for an extended period of time," and "[t]hese types of trials are stressful, to say the least, on everybody involved." N.T., 9/7/16, at 89. Furthermore, Appellant was not in the area or an adjacent jurisdiction, but instead, the evidence showed he had "traveled through multiple states," his whereabouts were unknown, and there was "no reason to believe that if [the] court were to continue this case for any period of time, [Appellant would be] in custody." ***Id.*** at 89-90.

- 11 -

Appellant points to no authority — and we have not discovered any — supporting his inference that his attendance at all prior proceedings excused his failure to appear for trial such that trial should not have been conducted in his absence. We emphasize that after Appellant's counsel informed Appellant that his request for a continuance was denied, Appellant did not respond to counsel's repeated attempts, over 25 days, to contact him. *See Kelly*, 78 A.3d at 1144; N.T., 9/7/17, at 8-10; N.T., 9/6/17, at 4. Appellant has advanced no claim he was unaware of the trial date, nor any explanation for his failure to appear. *See Pantano*, 836 A.2d at 950. Additionally, the trial court accepted Wife's testimony that upon learning trial would not be continued, he and Girlfriend left the Commonwealth to avoid prosecution. To the extent Appellant argues the trial court erred in accepting any part of Wife's testimony, no relief is due, as we defer to the trial court's credibility determinations. *See Freeman*, 827 A.2d at 393-94. We conclude the trial court did not abuse its discretion in conducting trial in Appellant's absence. *See Wilson*, 712 A.2d at 739; *Kelly*, 78 A.3d at 1142-43; *Pantano*, 836 A.2d at 950.

Next, Appellant avers the trial court erred in denying his mid-trial motion, made by his counsel upon his apprehension in California, for a continuance so that Appellant could testify. Appellant contends he had the right to be present at trial and to testify. He reasons he could have been "returned to Pennsylvania if expedited within two weeks," and the

Commonwealth would not have been prejudiced. Appellant's Brief at 30, 34.

We disagree.

> This Court has stated:
>
> > A defendant has the absolute right to be present at all stages of the criminal proceedings against him. Pa.R.Crim.P. 602(A)[.] The trial court has the discretion to grant or deny a request for a continuance. . . .
> >
> > Where a trial court denies a request for continuance, discretion is abused where the defendant's right outweighs the Commonwealth's need for efficient administration.

*Pantano*, 836 A.2d at 950 (some citations omitted). As stated above, a trial court has the authority and need "to run efficiently." *Id.*

We incorporate our above discussion relating to the trial court's decision to proceed with trial in Appellant's absence. We emphasize the trial court found Appellant was aware of his trial date but undertook action — including selling his property, packing travel necessities, leaving the Commonwealth, and arranging for Wife to send him money for support — in order to avoid the trial court's jurisdiction. Appellant's request for a continuance in order to testify was made only after he was apprehended in California. Thus, Appellant's claim, that it was the court's denial of a continuance that infringed his right to testify at trial, is meritless. Finally, Appellant's assertion, that the Commonwealth would not have been prejudiced by a delay of indeterminate length, ignores the court's finding that the Commonwealth bore great expense in ensuring the appearance of two out-of-state witnesses. Under these circumstances, we further agree that Appellant's right to testify did not

outweigh the trial court's and the Commonwealth's need for efficient administration. ***See Pantano***, 836 A.2d at 950. Accordingly, no relief is due.

We address together Appellant's last two claims — that this Court should vacate, respectively, his SORNA designation as an SVP and lifetime registration requirement. Appellant relies on this Court's October 31, 2017, decision in ***Butler***, 173 A.3d 1212, which declared SORNA provision Section 9799.24(e)(3) unconstitutional under ***Apprendi v. New Jersey***, 530 U.S. 466 (2000), and ***Alleyne v. United States***, 570 U.S. 99 (2013). ***See*** 42 Pa.C.S. § 9799.24(e)(3) ("At the hearing prior to sentencing, the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator."); ***Butler***, 173 A.3d at 1218 (Section 9799.24(e)(3) "violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt"). By extension, this Court also concluded the defendant's judgment of sentence, to the extent it required him to register as an SVP for life, was illegal. ***Butler***, 173 A.3d at 1218.

On appeal, the trial court and Commonwealth agree that under the Superior Court's ***Butler*** decision, Appellant's SVP designation should be vacated. ***See*** Trial Ct. Op. at 15; Commonwealth's Brief at 13-14. However, they both suggest this Court should affirm Appellant's requirement to register as a sex offender. Trial Ct. Op. at 15 (SORNA's "tier-based registrations"

- 14 -

remain valid[12]); Commonwealth's Brief at 13-14 (Appellant is subject to requirements of Subchapter H of Act 29).[13]

On March 26, 2020, during the pendency of this appeal, our Supreme Court reversed this Court's decision in **Butler**. **Butler**, ___ A.3d ___, 2020 WL 1466299. The Supreme Court concluded the SVP designation, as well as the registration, notification, and counseling requirements specific to SVPs, "do not constitute criminal punishment and therefore the procedure for

_____

[12] Criminal defendants who are not designated SVPs may nevertheless be required to register based on convictions of enumerated Tier I, II, or III offenses. **See** 42 Pa.C.S. § 9799.15(a)(1)-(3), (6) (conviction of Tier I sexual offense carries 15-year registration term; Tier II offense carries 25 year-term; Tier III offense carries lifetime registration; and SVP designation carries lifetime registration).

[13] The Pennsylvania Supreme Court explained:

> Following our decision in [**Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017),] and the Superior Court's decision in [**Butler**], the General Assembly passed Act 10 of 2018, which divided SORNA into two subchapters. Subchapter H is based on the original SORNA statute and is applicable to offenders . . . who committed their offenses after the December 20, 2012 effective date of SORNA; Subchapter I is applicable to offenders who committed their offenses prior to the effective date of SORNA and to whom the **Muniz** decision directly applied. The only relevant change with regard to SVPs under Subchapter H is the addition of a provision allowing SVPs, and other lifetime registrants, to petition for removal from the registry after 25 years. **See** 42 Pa.C.S. §9799.15(a.2). The General Assembly later passed Act 29 of 2018, which replaced Act 10 but made no relevant changes to Subchapter H regarding the statutory scheme applicable to SVPs. . . .

**Butler**, ___ A.3d at ___ n.11, 2020 WL 1466299 at * 6 n.11.

designating individuals as SVPs under Section 9799.24(e)(3) is not subject to the requirements of *Apprendi* and *Alleyne* and remains constitutionally permissible." *Id.* at ___, 2020 WL 1466299 at *1.

We conclude resolution of Appellant's claims is governed by our Supreme Court's decision in *Butler*. *See In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013) ("[T]he general rule is that the decision announcing a new rule of law is applied retroactively so that a party whose case is pending on direct appeal is entitled to the benefit of the changes in the law."). As the Supreme Court specifically reversed this Court's decision in *Butler* and declared constitutional SORNA's provisions governing SVP designation and attendant registration requirements, we deny relief on Appellant's last two claims.

Furthermore, we conclude Appellant is entitled to no relief on his claim that he is not subject to registration under Subchapter H of Act 29 where, he contends, he "has not received any notice that it is the Commonwealth's position that he must register pursuant to the provisions of Act 29." Appellant's Brief at 15-16. The Commonwealth responds this issue is waived because Appellant did not raise any such Subchapter H claim before the trial court.[14] Commonwealth's Brief at 14. Moreover, the Commonwealth avers in

_____

[14] Act 29 was enacted on June 12, 2018, while Appellant's PCRA petition was pending before the trial court. Indeed, Appellant's counseled amended PCRA petition was subsequently filed on May 19, 2019. Thus, we agree with the Commonwealth that Appellant could have raised an Act 29 claim before the trial court.

- 16 -

the alternative, it is "unclear what type of notice [he] believes he is entitled insofar as [he] he set forth no law or substantive argument to support his contention." *Id.* at 18.

We agree with the Commonwealth. Appellant's Subchapter H claim is waived for failure to raise it before the trial court and failure to discuss, on appeal, pertinent legal authority supporting his position. *See* Pa.R.A.P. 302(a), 2119(a) (argument shall include discussion and citation of authorities as are deemed pertinent); *Commonwealth v. Berry*, 877 A.2d 479, 485 (Pa. Super. 2005) (*en banc*) (issues that are not supported by citations to record and to pertinent legal authority are waived).

In sum, we conclude the trial court did not abuse its discretion in conducting trial *in absentia* and in denying Appellant's mid-trial motion for a continuance. We further affirm Appellant's designation as an SVP and his attendant registration requirements. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/19/2020

- 17 -