873 A.2d 752 (2005)
In the Interest of: K.Q.M., A Minor,
Appeal of: K.Q.M., A Minor, Appellant.
Superior Court of Pennsylvania.
Submitted October 21, 2004.
Filed April 22, 2005.
*753 Victoria H. Vidt, Pittsburgh, for appellant.
Michael W. Streily, Deputy Dist. Atty., Karen Edwards, Asst. Dist. Atty., Pittsburgh, for Com., appellee.
Before: ORIE MELVIN, TODD and BOWES, JJ.
BOWES, J.
¶ 1 K.Q.M. appeals from the order entered on November 3, 2003, that adjudicated him guilty of two counts each of criminal mischief and criminal conspiracy for events occurring on March 15, 2003. Appellant also was adjudicated delinquent of one count each of criminal mischief and criminal conspiracy and two counts of summary criminal mischief for related events that occurred on March 2, 2003; however, disposition on those charges was discontinued. We are constrained to vacate the orders.
¶ 2 The following facts are pertinent. During the early morning hours of March 15, 2003, Moon Township Police Officer Alan Morrow was investigating several incidents of vandalism involving graffiti written on automobiles. The investigation identified Appellant and his accomplice, E.G., as possible suspects. At the time, Appellant was sixteen years old. At approximately 3:00 a.m., Officer Morrow telephoned E.G.'s residence and asked that an adult come outside to speak with him.
¶ 3 E.G. and his mother, who is deaf, greeted Officer Morrow and his partner, Officer Jeffrey Clotz, at the front door of the residence and invited the officers inside. Two other uniformed police officers remained outside. Shortly thereafter, E.G.'s mother fainted in the hallway near the kitchen. Upon hearing the woman crash to the floor, the two officers who *754 were waiting outside entered the house and summoned paramedics. E.G.'s father came to the kitchen from the upper level of the residence. Although E.G.'s father also is deaf, E.G.'s older brother, Patrick, helped the father communicate with police. With Patrick's assistance, the police informed E.G.'s father that they were there to investigate a vandalism incident.
¶ 4 The police questioned E.G. about the alleged incidents and the white spray paint that was visible on E.G.'s hands. Prior to questioning E.G., the police advised him that he was a suspect and informed him he did not have to answer their questions at that time. E.G. admitted his involvement in the vandalism and called out to Appellant who was downstairs in the residence. Thereafter, Appellant joined everyone in the kitchen.
¶ 5 At this juncture, the paramedics arrived. The police directed the boys to an adjacent dining room so the paramedics could attend to E.G.'s mother. While in the dining room, Officer Morrow and Officer Clotz resumed questioning the boys. The police officers did not advise either boy of his Miranda rights or tell them that they had the right to an attorney. Further, the police officers interrogated Appellant without contacting his parents or informing him that he was not required to speak with them.
¶ 6 As noted supra, E.G. was very cooperative and forthcoming. Appellant, however, initially denied involvement and only admitted his complicity after E.G.'s prompting. Eventually, both boys admitted to their involvement in that night's incident and a similar incident that occurred two weeks earlier. Neither boy was arrested that night. However, while E.G. remained at his residence, Officer Morrow transported Appellant to the police station where his mother collected him.
¶ 7 Based on Appellant's incriminating statements, on August 26, 2003, the Commonwealth filed two petitions of delinquency against Appellant. Prior to the adjudication hearing, the court denied Appellant's motion to suppress his March 15, 2003 statements. Following a dispositional hearing, Appellant was adjudicated delinquent of the aforementioned offenses and sentenced to probation and fifty hours of community service. This appeal followed.
¶ 8 Appellant raises the following question for our review:
Did the [trial court] err in failing to suppress [Appellant's] statement to police when it was taken without the officers first notifying [Appellant] of his right to remain silent as required by Miranda v. Arizona, 383 [384] U.S. 436[, 86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), and also without ensuring that the juvenile['s] parents were present for the questioning?
Appellant's brief at 4.
Our standard of review of a denial of suppression is whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
Commonwealth v. Reppert, 814 A.2d 1196, 1200 (Pa.Super.2002) (en banc) (internal quotations and citation omitted).
¶ 9 The crux of Appellant's contention is that his incriminating statements *755 were the result of a constitutionally infirm interrogation. Our Supreme Court outlined the relevant inquiry as follows:
To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects subject to custodial interrogation by law enforcement officers must be warned that they have the right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney. See Thompson v. Keohane, 516 U.S. 99, 107, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (citing Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Juveniles, as well as adults, are entitled to be apprised of their constitutional rights pursuant to Miranda. See In re Gault, 387 U.S. 1, 57, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). If a person is not advised of his Miranda rights prior to custodial interrogation by law enforcement officers, evidence resulting from such interrogation cannot be used against him. See Miranda, 384 U.S. at 436, 444, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694; Commonwealth v. Chacko, 500 Pa. 571, 459 A.2d 311, 314-15 (1983). A person is deemed to be in custody for Miranda purposes when "[he] is physically denied of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." Commonwealth v. Williams, 539 Pa. 61, 650 A.2d 420, 427 (1994) (citations omitted).
In re R.H., 568 Pa. 1, 5-6, 791 A.2d 331, 333 (2002). The several factors the court considers to determine whether a person is in custody for Miranda purposes under the totality of the circumstances of a case include: the basis for the detention; its duration; its location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; whether there was a demonstration, threat or use of force; and the method of investigation used to confirm or dispel police suspicions. See Commonwealth v. Busch, 713 A.2d 97 (Pa.Super.1998).
¶ 10 Herein, the trial court concluded that Appellant was not in custody at the time he offered the incriminating statement, supplying the following reasoning in support of its decision:
Based upon the evidence, I found that there was no custodial interrogation. While the facts of the present case are distinguishable from those in In Re V.H.[, 788 A.2d 976, 980 (Pa.Super.2001),] in that K.Q.M. was not questioned in his home nor in the presence of his parents, I found that there was not a significant restraint of freedom to constitute a custodial interrogation.
K.Q.M. contends that the commotion caused by E.G.'s mother's medical condition caused disorder and further, the police officers should have told K.Q.M. that he did not need to speak to them at that time. While acknowledging that the events were chaotic, I found that this chaos did not equate to a custodial interrogation. K.Q.M. was not deprived of his freedom of movement or action in any significant way.
Further, the inquiry is whether K.Q.M. reasonably felt he was not free to leave. K.Q.M. testified that he did not feel he could freely leave because it was not his home and that there were police officers present. The analysis is whether it was reasonable for K.Q.M. to believe he could not leave. I found that his belief was not reasonable based upon the record presented. There is no testimony that K.Q.M.'s movement or actions were restricted by the police officers or that K.Q.M. attempted to leave and was *756 stopped by the police officer. To the contrary, he voluntarily came to the kitchen area when asked by E.G. to come.
K.Q.M. claims that he was threatened to be taken to Shuman Center by Officer Clotz. This testimony was not believable in light of Officer Morrow's credible testimony that he was present the entire time and that it was E.G. and his father who suggested that K.Q.M. tell the truth. Thus, K.Q.M.'s statements were the result of prompting by E.G. and his father and not by the police officers. The fact that K.Q.M.'s parents were not present is not relevant since this was not a custodial interrogation and K.Q.M.'s statements were voluntarily made after prompting by E.G. and his father.
Trial Court Opinion, 3/15/04, at 5-6. Thus, the court concluded that since Appellant never was in custody prior to volunteering his statement, no Miranda warning was needed and the police were not required to inform his parents that he was being questioned. We hold that the trial court erred in reaching its conclusion.
¶ 11 In arriving at its determination, the trial court discussed our holding in In re V.H., 788 A.2d 976 (Pa.Super.2001). In that case, the police accepted an invitation to interview a juvenile suspect in the dining room of his parent's home. The juvenile's parents were present during the entire thirty-to-forty minute interview and expressly granted permission for police to interrogate their son. Prior to commencing the interview, the police informed the juvenile and his parents that any information would be submitted to the District Attorney's office.
¶ 12 The juvenile subsequently was arrested; however, following a suppression hearing, the trial court concluded that the juvenile was in custody for Miranda purposes in that he reasonably believed that he was not free to leave or stop the interview. Hence, the trial court entered an order suppressing the juvenile's statements to the police. On appeal, we reversed the trial court's suppression order, holding that Miranda was not triggered under the totality of the circumstances since the juvenile was not in custody during the police interview. Relevant to our conclusion were the facts that "the interview was conducted in the appellant's home, preceded by the invitation and permission of his parents at the scene[.]" V.H., supra at 982.
¶ 13 However, In re V.H. is distinguishable from the facts of the case sub judice. Appellant was neither interviewed in his own home nor with his parents' knowledge. Additionally, Appellant was not informed that he was a suspect in the police investigation or told that he did not have to answer the police officer's questions. Indeed, the circumstances of Appellant's interrogation align more closely with Commonwealth v. Zogby, 455 Pa.Super. 621, 689 A.2d 280 (1997), than In re V.H. In Zogby, we held that an adult suspect was entitled to Miranda warnings after a police officer awakened him in his bed at 4:00 a.m. and directed him to dress and go outside to answer questions regarding a hit and run accident that the officer was investigating. In affirming the trial court's suppression order, this Court observed,
The reality of the matter is that when a police officer requests a civilian to do something, even something as simple as "move along," it is most often perceived as a command that will be met with an unpleasant response if disobeyed. Thus, unless told that they have a right to decline, most individuals are not likely to perceive a request from a police officer as allowing for a choice.
*757 Id. at 282. We concluded that under the totality of the circumstances of that case, the defendant reasonably believed that his freedom of action was restricted and that he had no choice but to obey the officer's request and cooperate with the investigation. Accordingly, we held that the police officer's interview was tantamount to a custodial interrogation, necessitating that Appellant be advised of his rights pursuant to Miranda.
¶ 14 Instantly, Appellant was sixteen years old with no previous experience in the criminal justice system. He was questioned at approximately 3:30 a.m., without parental notification, while he was a guest in E.G.'s home. Appellant emerged from the basement of the residence to find E.G.'s mother laying semi-conscious on the kitchen floor and four uniformed police officers in the residence. Two of the uniformed officers directed Appellant and E.G. into an adjacent room and interrogated Appellant without advising him of his Miranda rights or informing him that he did not have to respond to their questions or that he was free to leave.[1] Separated from E.G.'s parents and deprived of the opportunity to contact his own family, Appellant gave an incriminating statement to the two uniformed officers.
¶ 15 Under the totality of the circumstances in this case, we conclude that Appellant reasonably believed that his freedom of action was restricted by the interrogation in that he could not disobey the uniformed officers by refusing to answer their questions, leave the residence, or retreat to another portion of the residence. Compare Commonwealth v. Dupre, 2005 PA Super 12, 866 A.2d 1089, (no custodial interrogation where single plain-clothed officer with no visible weapons conducted voluntary interview in bedroom of adult suspect's apartment). As the interrogation was custodial in nature and Appellant was not advised of his rights pursuant to Miranda, Appellant's incriminating statements should have been suppressed. Thus, we vacate the trial court orders adjudicating Appellant delinquent and remand.
¶ 16 Order vacated. Case remanded. Jurisdiction relinquished.
NOTES
[1] While Appellant testified that Officer Clotz threatened to take him to a juvenile detention center if he did not cooperate with the investigation, the trial court elected to believe Officer Morrow's contrary testimony that no such threat occurred. As the record supported the court's finding of fact, we are bound by it. See Commonwealth v. Reppert, 814 A.2d 1196 (Pa.Super.2002) (en banc). Hence, the alleged threat has no bearing on our determination.