J-A20038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WILLIAM GAGE JACOBS | |
| Appellant | No. 3 EDA 2015 |

Appeal from the Judgment of Sentence of December 2, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0002917-2013

BEFORE:  DONOHUE, J., SHOGAN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                **FILED OCTOBER 15, 2015**

William Jacobs appeals his December 2, 2014 judgment of sentence, which was imposed after Jacobs was convicted in a non-jury trial of driving under the influence ("DUI"), careless driving, and reckless driving.[1]  For the reasons contained herein, we affirm the judgment of sentence.

On October 19, 2012, following a severe traffic accident, Jacobs was arrested and charged with the above offenses, as well as damage to unattended vehicle or property and driving at a safe speed.[2]  The trial court summarized the relevant facts of this case as follows:

> On October 19, 2012, [Jacobs], Kristopher Lilick and Julie Radliff left "The Rib House" restaurant in [Jacobs'] 2004 Jeep Wrangler,

---

[1]    ***See*** 75 Pa.C.S. §§ 3802(c), 3714, and 3736, respectively.

[2]    ***See*** 75 Pa.C.S. §§ 3745 and 3361, respectively.

after imbibing several alcoholic beverages. [Jacobs] drove to Radliff's house, where she exited the vehicle. After dropping Radliff off, [Jacobs'] driving became increasingly hazardous as he exceeded the speed limit on wet roads. While driving southwest on Church Road, [Jacobs] accelerated to approximately sixty-five miles per hour, lost control of the vehicle, and struck the guardrail. Upon hitting the guardrail, Mr. Lilick was ejected from his passenger seat in the vehicle. Because [Jacobs] was wearing a seat belt, he remained in the vehicle until it eventually came to a stop.

Immediately prior to the accident, driver Jeffrey Rawles made a left turn onto Church Road. Rawles heard [Jacobs'] vehicle strike the guardrail and he turned his car around to see what happened. Approaching the accident, Rawles briefly talked with Mr. Lilick. Mr. Lilick then left the accident scene and walked to a friend's house for transportation to a hospital. Later, Mr. Lilick arrived at Mercy Suburban Hospital where he was treated for lacerations to the back of his head, road rash and other abrasions. Subsequently, Mr. Lilick was transferred to the Temple University Hospital Emergency Room for further care.

After speaking with Mr. Lilick, Rawles contacted the Upper Merion Police Department. At approximately 2:28 a.m., Upper Merion Township Patrol Officer Joseph Davies received a report regarding a vehicle accident on Church Road. Upon arrival, Officer Davies found a heavily-damaged gray Jeep Wrangler, half of which sat off the road. An initial search of the immediate area surrounding the accident for anyone involved was unsuccessful. As police were leaving the scene, another Upper Merion Police Officer, Officer Reiner, discovered [Jacobs] between two tractor trailers in a nearby parking lot.

Officers Davies and Reiner approached [Jacobs]. Officer Davies immediately noticed [that Jacobs] had an odor of alcohol, red-bloodshot glassy eyes, slurred speech and was unsteady on his feet. [Jacobs] admitted drinking that evening and that he operated the vehicle in the accident. At that point, Officer Davies requested Emergency Medical Services ("EMS") to treat [Jacobs'] injuries. While waiting for EMS, [Jacobs] was unable to identify other passengers in the vehicle or describe what happened. Officer Davies concluded that [Jacobs] was driving while impaired and informed [Jacobs] that he was under arrest for [DUI].

Officers Davies and Reiner waited with [Jacobs] until EMS arrived. EMS took [Jacobs] to Paoli Hospital where he was treated for various cuts and abrasions. At the hospital, Officer Davies read the DL-26 form to [Jacobs] and a blood sample was taken. The blood sample revealed that [Jacobs'] blood alcohol concentration (BAC) was 0.195%.

Trial Court Opinion ("T.C.O."), 3/4/15, at 1-2.

Prior to trial, Jacobs filed a motion seeking to suppress his admission to the police that he was the driver of the Jeep. Therein, Jacobs maintained that he was in custody, and, therefore, should have been provided with his **Miranda**[3] warnings before being interrogated. Following a hearing, the trial court denied Jacobs' motion.

On October 16, 2014, following a two-day bench trial, Jacobs was convicted of DUI, careless driving, and reckless driving. On December 2, 2014, the trial court sentenced Jacobs to eight days to six months' incarceration on the DUI conviction. The trial court imposed no further penalty on the reckless driving conviction. The Commonwealth agreed to *nolle prosse* the careless driving charge, even though the trial court had found Jacobs guilty of that offense. On December 12, 2014, Jacobs filed post-sentence motions, which the trial court denied on December 18, 2014.

On December 26, 2014, Jacobs filed a notice of appeal. On the same date, Jacobs filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), even though the trial court did not yet order

---

[3] **See Miranda v. Arizona**, 384 U.S. 436 (1966).

him to do so. On March 6, 2015, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Jacobs raises the following four questions for our review:

1. Did the lower court err in failing to suppress [Jacobs'] statement to police when it was taken without first giving [Jacobs] his **Miranda** warnings?

2. Did the lower court err in disregarding all of the testimony of [Jacobs'] expert witness, a qualified medical doctor and pathologist, even though his testimony raised a reasonable doubt as to whether it was [Jacobs] or actually the prosecution's own witness who was driving under the influence at the time of the accident?

3. Was there sufficient evidence to convict [Jacobs] for Reckless Driving?

4. Did the trial court properly exclude from evidence [Jacobs'] medical records (even though the Commonwealth had stipulated to their authenticity and which showed that [Jacobs] had suffered a concussion and a thoracic fracture) when [Jacobs] argued that the records were relevant to show his physical condition at the time he spoke to the arresting officer?

Brief for Jacobs at 5.

In his first issue, Jacobs challenges the trial court's denial of his motion to suppress his admissions that he was the driver of the vehicle and that he had been drinking alcohol prior to driving. Specifically, Jacobs contends that the statements were obtained in violation of his constitutional rights pursuant to the United States Supreme Court's seminal pronouncement in **Miranda v. Arizona**, 384 U.S. 436 (1966). Our standard of review over such a claim is well-settled.

Our standard of review of an order denying a motion to suppress evidence is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Crompton*, 682 A.2d 286 (Pa. 1996); *Commonwealth v. Chambers*, 598 A.2d 539 (Pa. 1991). In making this determination, this [C]ourt may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. *Id.* If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.*

*Commonwealth v. Ellis*, 700 A.2d 948, 954 (Pa. Super. 1997) (citations modified); *see Commonwealth v. McAdoo*, 46 A.3d 781, 783-84 (Pa. Super. 2012), *allowance of appeal denied*, 65 A.3d 413 (Pa. 2013); *Commonwealth v. Hoppert*, 39 A.3d 358, 361-62 (Pa. Super. 2012). "The Commonwealth need only show by a preponderance of the evidence that a voluntary, knowing and intelligent waiver of a constitutional right was made." *Commonwealth v. Davis*, 526 A.2d 1205, 1209 (Pa. Super. 1987); *see Commonwealth v. Smith*, 784 A.2d 182, 185-86 (Pa. Super. 2001) (same in context of challenge to probable cause in support of warrant).

It is a fundamental precept of constitutional law that a suspect subject to a custodial interrogation by police must be warned that he has the right to remain silent, that anything he says may be used against him in court, and that he is entitled to the presence of an attorney. *Miranda*, 348 U.S. at 469. If an individual is not advised of his *Miranda* rights prior to a custodial interrogation by law enforcement officials, evidence obtained through the

interrogation cannot be used against him.  ***In re K.Q.M.***, 873 A.2d 752, 755 (Pa. Super. 2005).  "[I]n order to trigger the safeguards of ***Miranda,*** there must be both custody and interrogation.  Statements not made in response to custodial interrogation are classified as gratuitous and are not subject to suppression for lack of ***Miranda*** warnings."  ***Commonwealth v. Heggins***, 809 A.2d 908, 914 (Pa. Super. 2002).

Jacobs focuses his argument upon his contention that he was in custody for ***Miranda*** purposes.  Jacobs highlights the facts that he was injured, that two police officers questioned him, that the officers arrived in separate vehicles, and that the officers did not seek medical assistance until after speaking with him about the accident.  ***See*** Brief for Jacobs at 18-25.  None of these assertions compels us to conclude that Jacobs was in custody for ***Miranda*** purposes.

In deeming an interaction to be a custodial interrogation, "the police officer's subjective intent does not govern the determination but rather the reasonable belief of the individual being interrogated."  ***Commonwealth v. Zogby***, 689 A.2d 280, 282 (Pa. Super. 1997).  An individual is deemed to be in custody for ***Miranda*** purposes when he "is physically denied . . . his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation."  ***K.Q.M.***, 873 A.2d at 755 (citing ***Commonwealth v. Williams***, 650 A.2d 420, 427 (Pa. Super. 1994)).  The court must consider the totality of circumstances, including factors such as "the basis for the

detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions." ***Commonwealth v. Busch***, 713 A.2d 97, 101 (Pa. Super. 1998).

Viewing the totality of the circumstances, it is clear that Jacobs was not in custody. When the police arrived at the scene, they were unable to locate anyone involved in the crash. However, during a search of the surrounding area, they found Jacobs hiding between two tractor trailers. In an attempt to investigate the accident, and not for the purposes of detaining or confining Jacobs, the police approached the hiding Jacobs and asked him if he was involved in the crash. The officers did not relocate him, nor did they show force or detain him for an unreasonable period of time. The purpose of the brief detention was to investigate the accident, not to coercively interrogate Jacobs. Jacobs readily admitted to driving the Jeep and to drinking seven or eight beers. Considering the totality of the circumstances, as well as the factors delineated in ***Busch***, Jacobs was not in custody. The officers merely asked him some questions for the purpose of investigating the accident.

Jacobs' assertions to the contrary are unpersuasive. The facts that two officers approached him, and that they arrived in two separate vehicles, do not create a coercive environment such that ***Miranda*** would be triggered. Nor do they create a situation where a reasonable person would feel

involuntarily detained, as would be the case if, for example, Jacobs was surrounded by a team of officers with their weapons drawn. We also are not persuaded by the fact that Jacobs was injured. That he was injured and was unable to leave the scene does not, *ipso facto*, mean that the police created an environment where he could not leave. The officers simply approached Jacobs and asked him some questions for the purposes of investigating a traffic accident. They did not place him in custody for **Miranda** purposes. Jacobs is not entitled to relief.

In his second issue, Jacobs argues that the trial court abused its discretion by disregarding the testimony of Jacobs' expert, Dr. Jonathan Briskin. Dr. Briskin testified as an expert at trial that, to a reasonable degree of medical certainty, Jacobs was a restrained passenger in the Jeep, and not the driver. The trial court elected not to credit Dr. Briskin's testimony. In its Rule 1925(a) opinion, the court provided the following explanation of Dr. Briskin's testimony and the court's reasoning for disregarding that testimony:

> Dr. Briskin opined that [Jacobs'] injuries to his lower left abdomen and right shoulder could be consistent with [Jacobs] being restrained in the passenger seat. In reaching this conclusion, Dr. Briskin reviewed medical records of both [Jacobs] and Mr. Lillick, as well as photographs of [Jacobs'] injuries and the damaged vehicle. Dr. Briskin did not personally view [Jacobs'] injuries nor did he inspect [Jacobs'] vehicle. Dr. Briskin's analysis was based on his review of a limited amount of evidence and Dr. Briskin was unable to conclude what actually happened. Dr. Briskin did, however, note that the injuries sustained by [Jacobs] **could** occur if [Jacobs] was a restrained passenger in a head[-]on collision.

Accordingly, [the trial court] chose to disregard much of Dr. Briskin's testimony because it was inconclusive and based on conjecture. Furthermore, whatever significance [the court] allotted to Dr. Briskin's testimony was weighed against [Jacobs'] stipulation to his BAC and his admission to driving, in addition to the other evidence [in the case.]

T.C.O. at 13 (emphasis in original).

Jacobs maintains that the trial court abused its discretion by not accepting wholesale Dr. Briskin's testimony. This amounts to a challenge to the weight of the evidence. When reviewing a weight of the evidence claim, we consider the following:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000); *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994) A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Id.* (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest

consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. ***Commonwealth v. Farquharson***, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 744 A.2d at 753.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations modified).

Our task in evaluating a weight challenge is as follows:

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must examine the record and assess the weight of the evidence; not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury. Where the record adequately supports the trial court, the trial court has acted within the limits of its judicial discretion.

*Brown*, 648 A.2d at 1190 (citation omitted).

We discern no abuse of discretion by the trial court. The court carefully considered the testimony of Dr. Briskin, and weighed the contents, both favorable and unfavorable to Jacobs, against the other evidence presented in the case and reached a verdict. That Dr. Briskin was an expert in no way binds the trial court to credit any, all, or even some of his testimony. The trial court astutely considered the evidence, and weighed

the value of that evidence against the remaining evidence.  The court did not abuse its discretion, and this claim fails.

In his third issue, Jacobs argues that the evidence presented at trial was insufficient to sustain his conviction for reckless driving.  Our standard of review governing sufficiency challenges is well-settled.  We must determine:

> whether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa. Super. 2003) (citations omitted).

Pursuant to 75 Pa.C.S. § 3736(a), "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."  As a preliminary matter, we note that the evidence, viewed in the light most favorable to the Commonwealth, demonstrates that Jacobs was the driver of the vehicle and that he was substantially intoxicated when driving.  However, "evidence of intoxication alone is insufficient to support a reckless driving conviction."

*Commonwealth v. Jeter*, 937 A.2d 466, 468 (Pa. Super. 2007). The Commonwealth must present additional "indicia of unsafe driving" in order to prove that the defendant exhibited a "willful or wanton disregard for the safety of persons or property." *Id.*; 75 Pa.C.S. § 3736(a). The Commonwealth clearly has met that burden here.

In addition to driving while intoxicated, the testimony at trial demonstrated Jacobs' recklessness. The witnesses testified that Jacobs was speeding on wet roads at 2:30 in the morning. Additionally, in his intoxicated state and with these dangerous conditions, Jacobs decided to "do donuts" in the center of a public intersection. He then drove into a quarry, where he drove the Jeep into piles of gravel and stone, and then did more donuts in the gravel. One of the passengers in the car pleaded with Jacobs to take her home. Jacobs then sped away, and drove into a guardrail. This evidence undoubtedly was sufficient to demonstrate that Jacobs was guilty of reckless driving.

In his final issue, Jacobs contends that the trial court abused its discretion by ruling that his medical records were inadmissible at trial. The records at issue were produced following a visit to the doctor approximately one week after the accident. According to Jacobs, the records would show that he suffered from a concussion and a fracture of one of his vertebra. Jacobs maintains that the records, and the injuries described therein, were relevant to the question of whether his admissions to the police after the accident were credible.

Our standard of review of challenges to the admissibility of evidence is well settled:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.
>
> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1253 (Pa. Super. 2011) (citation omitted). "In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect." *Commonwealth v. Hawk*, 709 A.2d 373, 376 (Pa. 1998) (citing *Commonwealth v. Crews*, 640 A.2d 395 (Pa. 1994); *Commonwealth v. Dollman*, 541 A.2d 319 (Pa. 1988)). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. Spiewak*, 617 A.2d 696, 699 (Pa. 1992).

The Commonwealth stipulated to the authenticity of the records, but not the admissibility of them. Despite their authenticity not being in

question, the trial court ruled them inadmissible primarily because Jacobs did not intend to call his diagnosing physician to explain the injuries and how injuries that were diagnosed one week after the accident would have impacted Jacobs at the time of the accident. Hence, the court ruled that the evidence was irrelevant. We agree with the trial court.

The primary issue at trial was whether Jacobs, or someone else, was driving the Jeep at the time of the accident. Eyewitness testimony overwhelmingly placed Jacobs in the driver's seat. Jacobs also admitted to the police that he was the driver. However, with the medical records, Jacobs wanted to show that his admission should not have been believed. The records simply were not relevant for that purpose. As noted, evidence is relevant if it tends to make one fact more or less likely. By this definition, the records would have had to show that he suffered substantially from an illness or injury **at the time of the *accident***. The records only would have proven Jacobs' mental and physical condition one week after the accident. Without supporting testimony to explain to the trial court that his injuries derived from the accident, that he suffered them in the accident, and that the effects of those injuries would have impaired his ability to accurately recall and relay to the officers the events that led to the crash, the records simply were not legally relevant. Consequently, the trial court did not abuse its discretion in ruling that the records were inadmissible.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/15/2015</u>