J-S11001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHILEE DIXSON, | |
| Appellant | No. 234 WDA 2015 |

Appeal from the Judgment of Sentence of January 12, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0008633-2011

BEFORE:  OLSON, J., RANSOM J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 9, 2017**

Appellant, Shilee Dixson, appeals from the judgment of sentence entered on January 12, 2015 in the Criminal Division of the Court of Common Pleas of Allegheny County.  We affirm.

Following a nonjury trial held on September 29 and 30, 2014, the court found Appellant guilty of second-degree murder (count one; 18 Pa.C.S.A. § 2502(b)), one count of robbery – inflict serious bodily injury (count two; 18 Pa.C.S.A. § 3701(a)(1)(i)), one count of criminal conspiracy (count three; 18 Pa.C.S.A.  § 903(c)), and one count of possession of firearm by a minor (count four; 18 Pa.C.S.A. § 6110.1(a)).  On January 12, 2015, the court sentenced Appellant at count one to 30 to 60 years of incarceration; at count two to a concurrent sentence of five to ten years'

---

*Former Justice specially assigned to the Superior Court.

incarceration; at count three to a concurrent sentence of three to six years'

incarceration; and no further penalty at count four.

The issues in this appeal arise from the following facts, which the trial

court aptly summarized.

> This matter arises out of the shooting death of Malachi Urbini on May 8, 2011 while he was being robbed of his I-Pad in an alley in McKees Rocks, [Pennsylvania]. During the robbery[,] Urbini was shot three times, twice in the back and once in the abdomen. One of the bullets that entered his back pierced his heart resulting in his death. Based on the investigation conducted by Allegheny County homicide detectives, [Appellant] was identified as the shooter and a warrant was issued for his arrest. After his arrest[,] [Appellant] gave a confession admitting to his involvement in the shooting. Prior to trial[, Appellant moved to suppress] his confession on the basis that he was under the age of 18 at the time of the confession, that he was not permitted to speak to his parents or [another] interested adult before waiving his *Miranda*[1] rights[,] and that he did not knowingly and voluntarily waive his right to remain silent.
>
> A suppression hearing was held on September 9 and 10, 2014 at which the Commonwealth presented the testimony of Detective Patrick Kinavey who testified that[,] on May 10, 2011[,] he and his partner went to [Appellant's] house to arrest him having obtained a warrant for his arrest for Urbini's murder. [Appellant's] mother informed the detectives that [Appellant] was not home[. She then called Appellant] and determined that he was at [a] T-Station in [downtown] Pittsburgh. [Appellant] agreed to wait for the detectives to pick him up. His mother described what he was wearing and indicated that he would be waiting outside the T-Station. Approximately 15 minutes later, at 10:45 a.m.[,] the detectives located [Appellant] and, after advising him that they had a warrant for his arrest for criminal homicide, he was handcuffed and transported to the detectives' headquarters. After a 10-15 [minute] ride to headquarters, [Appellant] was taken to an interview room and shackled to the

---

[1] *Miranda v. Arizona*, 384 U.S. 478 (1966).

floor. The interview room is approximately 8 feet by 10 feet with one window. [Appellant] was left alone for approximately 30-45 minutes. When initially interviewing [Appellant], the detectives knew that [Appellant] was only three days shy of his 18th birthday. [Appellant] was presented with a Rights Warning Waiver Form which set forth his **Miranda** rights which [Appellant] read and initialed indicating that he understood his rights and that he was willing to speak to the detectives. Detective Kinavey indicated that [Appellant] told them that [he] had two children, [one] age four and [the other eight] months, and that he was in the process of completing the twelfth grade. Detective Kinavey testified that [Appellant] did not appear to exhibit any confusion or inability to understand why he was [] taken into custody or the content of the waiver form that was presented to him. Detective Kinavey testified that no promises were made to [Appellant] nor was he threatened in anyway. Detective Kinavey testified that from the time they spoke with [Appellant's] mother until the time that they picked [Appellant] up and started the interview process it was approximately an hour and forty-five minutes. Detective Kinavey testified that [Appellant] did not ask for an attorney, never asked that the questioning be stopped[,] and never asked to speak to a parent or adult about waiving his rights or to be present during the interview. In addition, there was no [indication] that [Appellant] had any type of diminished capacity or any type of health problems. After the initial questioning, [Appellant] indicated that he was willing to give a recorded statement at which time he was transferred to another room and a recorded statement was taken beginning at 2:06 p.m. During the statement, which was played at the suppression hearing, [Appellant] stated that he had [spoken] with Taivon Cunningham on May 7, 2011, who had previously sold heroin to the victim in exchange for an I-Pod, and that Cunningham told [Appellant] that the victim then wanted to exchange his I-Pad for some more heroin. Cunningham then gave [Appellant] a handgun and told him to meet the victim in the nearby alley and rob him. [Appellant] took the gun and proceeded to the alleyway[. When Appellant pulled the gun out, the victim grabbed it. At that point, Appellant's] finger slid across the trigger and the gun went off[, striking] the victim. [Appellant] then returned to Cunningham's apartment leaving the I-Pad and the gun[. The following day, however, Appellant] retrieved the gun and initially hid it but then gave it to a relative. [Appellant] stated that he did not intend to shoot the victim, thinking that the safety was on, but the gun

discharged when the victim grabbed at [it]. During the recorded statement, [Appellant] did not sound confused or distressed. Detective Kinavey also testified that [Appellant] consented to give a buccal swap and consented to a search of his phone and that he executed a form evidencing his consent.

On cross[-]examination Detective Kinavey testified that [Appellant] did not ask for an opportunity to speak with his parents. In addition, although Detective Kinavey did not know that [Appellant's] father had come to the headquarters, he would not have allowed [Appellant] to speak with him in any event because [Appellant] was so close to the age of 18 and he was in custody pursuant to the arrest warrant. Detective Kinavey further testified that based on [Appellant's] age and the other background information that they had concerning him and, after consulting with the district attorney's office, it was determined that [Appellant] could be interviewed alone.

During the suppression hearing, [the parties] stipulated that [Appellant] had one prior involvement in the juvenile system related to a theft but there was no evidence that [Appellant] had [received *Miranda* warnings] at the time of that incident. [Appellant] presented the testimony of his father, Donnie Lee, who testified that upon being made aware that his son was being arrested he proceeded to the police station and asked to speak to his son. He testified that he was never allowed to see his son and only spoke to him as he was being led from the police station.

An order was entered on September 15, 2014 denying the motion to suppress[. The trial court found that,] under the totality of the circumstances[, Appellant] knowingly and voluntarily waived his *Miranda* rights. After a nonjury trial held on September 29 and 30, 2014, during which [Appellant's] confession was admitted into evidence, [Appellant] was found guilty as set forth above[.]

Trial Court Opinion, 6/20/16, at 1-5.

Appellant filed a timely notice of appeal on February 9, 2015. Thereafter, on February 10, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to PA.R.A.P.

- 4 -

1925(b).    After the trial court extended the filing deadline, Appellant preserved the issues he now raises on appeal by including them in his concise statement filed on January 19, 2016.

Appellant lists two claims for our consideration:

I.    Did the trial court abuse its discretion in denying [Appellant's] motion to suppress on the grounds that [Appellant] did not knowingly, intelligently and voluntarily waive his *Miranda* rights or voluntarily give an inculpatory statement to the police?

II.    Did the trial court err in denying [Appellant's] motion to suppress on the grounds that [Appellant] did not knowingly, intelligently and voluntarily consent to the search of his cell phone?

Appellant's Brief at 4 (complete capitalization omitted).

Appellant asserts that the trial court erred in denying his pretrial motion to suppress evidence.    We apply the following standard and scope of review to such challenges.

Our standard of review of an order denying a motion to suppress evidence is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error.    *Commonwealth v. Crompton* 682 A.2d 286 (Pa. 1996); *Commonwealth v. Chambers* 598 A.2d 539 (Pa. 1991).    In making this determination, this [C]ourt may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted.    *Id.*    If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.    *Id.*

*Commonwealth v. Freeman*, 128 A.3d 1231, 1240 (Pa. Super. 2015),

*quoting Commonwealth v. Jones*, 758 A.2d 228, 229 (Pa. Super. 2000).

Appellant's position is that the evidence adduced at his suppression hearing, even when viewed in the light most favorable to the Commonwealth, fails to show that he knowingly, intelligently, and voluntarily waived his right to the presence of a parent and/or counsel or that he knowingly and intelligently gave incriminating statements in response to police interrogation.[2] Appellant identifies several circumstances surrounding his interrogation to support his claims. Specifically, Appellant notes that, as a juvenile, he was: (1) placed in an interrogation room and shackled to the floor; (2) asked to sign a waiver of his rights less than an hour after police placed him in custody; (3) never told he could have a parent or other interested adult present during the interrogation; and, (4) subjected to police custody for almost three hours before making a taped statement. Appellant's Brief at 24. Appellant also alleges that the police prevented contact with his father at the police station, that he had only one prior contact with the juvenile adjudication system and no prior contact with the adult criminal justice system, and that he never had ***Miranda*** rights

_____

[2] The argument section of Appellant's brief does not address his second claim alleging that the trial court erred in refusing to suppress information obtained from his cellular telephone. Hence, we deem this issue to be abandoned and waived. ***See Commonwealth v. Roche***, 153 A.3d 1063, 1072 (Pa. Super. 2017) (failure to properly develop a claim in appellate brief renders an issue waived).

explained to him previously. *Id*. at 25. Under these circumstances, Appellant concludes that the Commonwealth failed to prove a valid waiver of *Miranda* rights by a preponderance of the evidence and that the trial court, therefore, erred in refusing to suppress his statement to police.

It is well settled that the police must administer *Miranda* warnings to all individuals subjected to custodial interrogation.

> It is a fundamental precept of constitutional law that a suspect subject to a custodial interrogation by police must be warned that he has the right to remain silent, that anything he says may be used against him in court, and that he is entitled to the presence of an attorney. *Miranda*, 384 U.S. at 469. If an individual is not advised of those rights prior to a custodial interrogation, any evidence obtained through the interrogation is inadmissible at trial. *In re K.Q.M.*, 873 A.2d 752, 755 (Pa. Super. 2005). The *Miranda* safeguards are triggered "whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 292 (1980).

*Freeman*, 128 A.3d at 1240 (parallel citations omitted).

In deciding whether a juvenile voluntarily, knowingly, and intelligently waived his *Miranda* rights before giving an incriminating statement to investigators, we consider the following principles.

> Regardless of whether a waiver of *Miranda* is voluntary, the Commonwealth must prove by a preponderance of the evidence that the waiver is also knowing and intelligent.
>
> *Miranda* holds that the juvenile may waive effectuation of the rights conveyed in the warnings provided the waiver is made voluntarily, knowingly and intelligently. The inquiry has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full

awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that **Miranda** rights have been waived.

A determination of whether a juvenile knowingly waived his **Miranda** rights and made a voluntary confession is to be based on a consideration of the totality of the circumstances, including a consideration of the juvenile's age, experience, comprehension, and the presence or absence of an interested adult. In examining the totality of circumstances, we also consider: (1) the duration and means of an interrogation; (2) the defendant's physical and psychological state; (3) the conditions attendant to the detention; (4) the attitude of the interrogator; and (5) any and all other factors that could drain a person's ability to withstand suggestion and coercion. We acknowledge that the *per se* requirement of the presence of an interested adult during a police interview of a juvenile is no longer required. Nevertheless, it remains one factor in determining the voluntariness of a juvenile's waiver of his **Miranda** rights.

**In re V.C.**, 66 A.3d 341, 351 (Pa. Super. 2013) (citation and internal quotation marks omitted), *appeal denied*, 80 A.3d 778 (Pa. 2013).

The trial court offered the following rationale in determining that Appellant voluntarily, knowingly, and intelligently waived his **Miranda** rights before confessing to detectives.

In this case, considering the totality of circumstances, it is clear that [Appellant] not only voluntarily, but knowingly and intelligently, waived his **Miranda** rights. In fact, other than the fact that [Appellant] was three days shy of his 18th birthday, there would be no evidence at all on which to base a claim that his **Miranda** rights were not voluntarily, knowingly, and intelligently waived. There is absolutely no evidence of any coercion or deception on the part of detectives in obtaining the waiver. The detectives spoke with [Appellant's] mother who was advised that they had an arrest warrant for her son and she

- 8 -

voluntarily made arrangements for his arrest. Shortly thereafter[, Appellant] was taken into custody, advised of why he [was arrested,] and was promptly transported to the detectives' headquarters. Detective Kinavey testified that they arrested [Appellant] at approximately 10:45 a.m. and the [w]aiver [f]orm was signed at 12[:00] p.m. During the approximate [one] hour and 15 minutes between his arrest and the execution of the [w]aiver [f]orm, [Appellant] was transported to headquarters and was left alone in the interrogation room for approximately 30 minutes. There is no evidence that he was coerced, threatened or subject to any intimidating actions or activity designed to affect his ability to make a voluntary waiver of his rights. The [w]aiver [f]orm clearly and explicitly advised him of his right to remain silent, his right to an attorney and the fact that he voluntarily consented to speak to the detectives. [Appellant] knowingly acknowledged these rights and voluntarily gave a recorded statement that was taken at approximately 2:06 p.m. and lasted for approximately [nine] minutes. Detective Kinavey indicated that [Appellant] was given some food and water and was given the opportunity to use the bathroom. Although he was shackled to the floor, which was standard procedure for a person in custody, there is absolutely no evidence to indicate that the duration and means of the interrogation was improper or was used to overcome [Appellant's] ability to make a knowing and voluntary decision concerning the waiver of his rights. There is no evidence to show that there was anything about [Appellant's] physical or psychological state that would affect his ability to make a knowing and intelligent waiver. There is no evidence that Detective Kinavey intimidated or threatened [Appellant] or [conducted the interrogation in any other manner] designed to drain [Appellant's] ability to withstand suggestion and coercion. Although [Appellant] was three days shy of his 18th birthday, the evidence establishes that he was in the process of completing the 12th grade and there was no evidence of any diminished intellectual or emotional capacity. Listening to the recorded interview, [Appellant] did not express any confusion or misunderstanding regarding the questions being put to him nor did [he] express any doubt in his responses. [Appellant] used the opportunity to give a statement to explain that the gun discharged accidentally when the victim grabbed at [it] and that [Appellant] didn't realize that the safety [mechanism was disengaged]. Although [Appellant's] father was present at the headquarters and asked to see his son, there is no evidence that

[Appellant] asked to see one of his parents or another adult because he did not understand the process or the rights that he was waiving. Although the age of a minor may be one factor in determining the voluntariness of a juvenile's waiver, there is no evidence to support the contention that [Appellant's] age in this case had any influence on the waiver of his **Miranda** rights. The fact that Detective Kinavey acknowledged that even if he knew that [Appellant's] father was present at the headquarters that he would not have allowed him to see his son does not, in and of itself, indicate either the use of coercion to obtain the waiver or that the waiver was not knowing, voluntary, and intelligent[.]

Trial Court Opinion, 6/20/16, at 6-8.

We have carefully reviewed the transcript of Appellant's suppression hearing. Based upon our review, we conclude that the record supports the trial court's factual findings and that the court's rulings are consistent with pertinent case law. Because the Commonwealth proved, by a preponderance of the evidence, that Appellant voluntarily, knowingly, and intelligently waived his **Miranda** rights, we see no reason to disturb the trial court's admission of Appellant's statement to detectives.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2017