J-S69041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID LEWIS GLADDEN, | |
| Appellant | No. 252 MDA 2016 |

Appeal from the Judgment of Sentence January 29, 2016
in the Court of Common Pleas of Dauphin County
Criminal Division at No.: CP-22-CR-0006077-2014

BEFORE:  STABILE, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 02, 2016**

Appellant, David Lewis Gladden, appeals from the judgment of sentence entered on January 29, 2016, following his non-jury conviction of two counts of possession with intent to deliver (PWID)[1] and one count of possession of drug paraphernalia.[2]  On appeal, Appellant challenges the trial court's denial of his motion to suppress.  For the reasons discuss below, we affirm.[3]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(32).

[3] Although we affirm, our reasoning is different from that of the trial court.  **_See Commonwealth v. Harper_**, 611 A.2d 1211, 1213 n.1 (Pa. Super.

*(Footnote Continued Next Page)*

We take the underlying facts and procedural history in this matter from the trial court's March 8, 2016 memorandum, the notes of testimony of the suppression hearing, and our independent review of the certified record.

Detective Nicholas Licata of the Harrisburg Police Department was working surveillance on October 14, 2014. Specifically, he was watching a building on the 300 block of South 14th Street in the city from a building directly across the street. [Detective] Licata was working with the Attorney General's Office and was aware that the building across the street was a drug buying location.

At about 8:15 p.m. he saw a tan-colored Buick approach the residence and park right in front of the building he was in. The driver [later identified as Appellant] was wearing a blue collared shirt. A black male [later identified as Zac Evans] with a hood[ed] sweatshirt walked off of the porch of the residence being watched and entered the vehicle. He appeared to be just talking to the driver and was in the car for about a minute. [Evans] exited the vehicle, returned to the porch and made [] hand[-]to[-]hand exchange[s] with two men on the porch. [Detective] Licata did not see any plastic baggies, drug paraphernalia or currency change hands. [Evans] then went back to the car and got in. [Detective] Licata saw [Evans] take something out of his pocket, [Appellant] looked at it and then they drove away. [Detective] Licata also testified that he rarely sees the actual items in hand[-]to[-]hand exchanges.

[Detective] Licata got the license plate and then called the Street Crimes Unit which was nearby to possibly stop the car as he believed it was involved in drug activity. This was based on his knowledge and experience with regard to hand[-]to[-]hand drug exchanges. The car was ultimately stopped.

*(Footnote Continued)* ───────────────

1992) ("It is well-settled that an appellate court may affirm the decision of the trial court if there is any basis on the record to support the trial court's action. This is so even if we rely upon a different basis in our decision to affirm.") (citations omitted).

On October 14, 2014, Officer Anthony Fiore of the Harrisburg Police Department was working the Street Crimes Unit with the unit supervisor, Sergeant [Milo] Hooper. After receiving [Detective] Licata's call, they initiated a traffic stop on the car identified by license plate number as the car was silver, not tan as [Detective] Licata had believed. They were on the 1600 block of Chestnut Street when they activated their lights. It's a one way road and the car stopped immediately in the middle of the road. [Officer] Fiore approached the passenger side and [Sergeant] Hooper approached the driver side. They asked them for identification and informed them they were initiating a traffic stop based on suspected drug activity. They discovered that [Evans] was a fugitive from state parole out of York County and he was immediately taken into custody without incident.

[Officer] Fiore's vehicle is not equipped with computers so when they run an individual's name they call back to [c]ounty dispatch to run the name. Dispatch then informs them of the license status. He was told that Appellant's license was suspended. As Appellant had a suspended license, he would not be permitted to drive the vehicle away. According to the certified PennDOT records, Appellant was in possession of a probationary license as of the date of the incident, though according to Fiore's testimony, he only was told that the license was suspended and had no information regarding a probationary license.

[Officer] Fiore determined that Appellant's grandmother owned the vehicle, but it is not department policy to call the owner unless there are exigent circumstances. An example of a circumstance where they would call the owner, is if the car was stopped due to a medical emergency and they had no reason to hold the car. The usual policy is to tow the vehicle. The department also has an inventory policy when towing a vehicle, that is, they check the vehicle to make sure that any valuables are accounted for so that there aren't any issues with missing items later. Prior to making the decision to tow the vehicle, [Officer] Fiore did not see anything in plain view.

As they were going to tow the vehicle, an inventory search was done on the entire vehicle pursuant to policy. During this search they located two sandwich bags of marijuana in the center console and two smaller bags of suspected MDMA or

cocaine. Field tests showed positives for marijuana and MDMA. [Officer Fiore] also found a digital scale and wallet.

The wallet contained Appellant's Social Security card and ID card. [Officer] Fiore also searched the trunk where he found three bags of marijuana. Upon finding the drugs, Appellant was arrested and searched incident to the arrest; they found $450[.00] and a cell phone. . . .

(Trial Court Opinion, 3/08/16, at 1-4) (record citations omitted).

On January 26, 2015, the Commonwealth filed a criminal information charging Appellant with two counts of PWID and one count of possession of drug paraphernalia. (*See* Criminal Information, 1/26/15, at unnumbered page 1). On June 1, 2015, Appellant filed an omnibus pre-trial motion to suppress, arguing that the police lacked probable cause for the motor vehicle stop and that the inventory search of the car was illegal. (*See* Omnibus Pre-Trial Motion, 6/01/15, at unnumbered pages 4-5). A suppression hearing took place on June 17, 2015, at the close of which, the trial court denied Appellant's motion to suppress. (*See* N.T. Suppression Hearing, 6/17/15, at 49-51).

On January 8, 2016, Appellant filed a motion to vacate the denial of the motion to suppress based upon the original trial judge's subsequent recusal and the reassignment of the case to a new judge. (*See* Motion to Vacate Prior Ruling, 1/08/16, at unnumbered pages 1-2). On January 11, 2016, the trial court granted the motion to vacate. On January 29, 2016, a second suppression hearing took place immediately prior to trial. The trial court denied the motion to suppress. (*See* N.T. Suppression Hearing,

- 4 -

1/29/16, at 78). Following a bench trial, the trial court convicted Appellant of all charges. (*See id.* at 83). By agreement of the parties, the trial court immediately moved to sentencing and sentenced Appellant to a term of incarceration of not less than one and one-half nor more than three years, to be served consecutively to any other sentence Appellant was then serving and a concurrent term of five years of probation. (*See id.* at 89-90).

On February 4, 2016, Appellant filed a timely notice of appeal. On February 8, 2016, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on February 24, 2016. *See id.* On March 8, 2016, the trial court issued a memorandum. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following issue for our review:

> I. Did not the [trial] court err in denying [Appellant's] motion to suppress physical evidence seized following a traffic stop?

(Appellant's Brief, at 4) (unnecessary capitalization and underlining omitted).

On appeal, Appellant challenges the denial of his motion to suppress. (*See id.* at 10-16). When we review a ruling on a motion to suppress, "[w]e must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings." *Commonwealth v. Holton*, 906 A.2d 1246, 1249

(Pa. Super. 2006), *appeal denied*, 918 A.2d 743 (Pa. 2007) (citation omitted). Because the suppression court in the instant matter found for the prosecution, we will consider only the testimony of the prosecution's witnesses and any uncontradicted evidence supplied by Appellant. **See id.** If the evidence supports the suppression court's factual findings, we can reverse only if there is a mistake in the legal conclusions drawn by the suppression court. **See id.**

Appellant first argues that the police lacked probable cause to stop his vehicle. (**See** Appellant's Brief, at 10-14). In response, the Commonwealth avers that reasonable suspicion, not probable cause, is the proper standard of review. (**See** Commonwealth's Brief, at 6-10). For the reasons discussed below, we agree with the Commonwealth and find that the police possessed sufficient reasonable suspicion of criminal activity to justify the motor vehicle stop.

Initially, we note that this Court has held that there are three levels of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. **See Commonwealth v. Jones**, 874 A.2d 108, 116 (Pa. Super. 2005). Thus, we have stated:

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.
>
> In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the

detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

*Id.* (citation omitted).

A police officer is authorized to make a brief investigative stop of a motor vehicle if he has "objective facts creating a reasonable suspicion that the detained motorist is presently involved in criminal activity." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1288 (Pa. Super. 2010) (*en banc*), *appeal denied*, 25 A.3d 327 (Pa. 2011) (quoting ***Commonwealth v. Murray***, 331 A.2d 414, 418 (Pa. 1975)). To determine if reasonable suspicion exists, the court must look to the totality of the circumstances. In discussing reasonable suspicion, this Court has stated that:

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to specific and articulable facts leading him to suspect criminal activity is afoot. **In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention.**

***Commonwealth v. Downey***, 39 A.3d 401, 406 (Pa. Super. 2012), *appeal denied*, 50 A.3d 124 (Pa. 2012) (citation omitted) (emphasis added); ***see***

*also Commonwealth v. Brown*, 23 A.3d 544, 551 (Pa. Super. 2011) (*en banc*) (combination of experienced police officer and suspicious, although not illegal behavior of appellant, was sufficient to justify automobile stop); *Commonwealth v. Hughes*, 908 A.2d 924, 927 (Pa. Super. 2006) (court must give due weight to "specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience. . . . even a combination of innocent facts, when taken together may warrant further investigation by the police officer.") (citation and quotation marks omitted); *Commonwealth v. Hayes*, 898 A.2d 1089, 1094 (Pa. Super. 2006) ("[a]lthough Appellee's behavior may also have been consistent with innocent behavior, that alone does not make the investigatory detention unlawful.") (citation omitted).

Here, Detective Licata, an experienced police officer, was conducting surveillance, at night, in a high-crime area. (*See* N.T. Suppression Hearing, 1/29/16, at 4-6, 9). He was watching a house on the 300 block of South 14th Street, Harrisburg, that was a known drug house. (*See id.* at 6). Detective Licata observed a Buick, driven by Appellant, approach; it parked directly across the street from the house (and in front of the building that Detective Licata was in). (*See id.*). Zac Evans, who was on the porch of the house, walked over to the car and briefly spoke with Appellant. (*See id.*). He then walked back to the porch and engaged in hand-to-hand exchanges with two other men sitting on the porch. (*See id.* at 6-7). Evans

walked back to the car, took something out of his pocket and handed it to Appellant. (*See id.* at 7). Evans got into the car and he and Appellant drove away. (*See id.*). Detective Licata did not see the items exchanged but testified that he rarely sees the actual items in hand-to-hand exchanges, however, based upon his experience he believed that Evans was getting money from the men to give to Appellant with the intent of buying drugs. (*See id.* at 9-10, 16). These observations provided sufficient reasonable suspicion to justify the stop of Appellant's vehicle. *See Commonwealth v. Clemens*, 66 A.3d 373, 380 (Pa. Super. 2013) (finding sufficient reasonable suspicion to justify investigative detention where experienced police officers patrolling in high-crime area observed hand-to-hand transaction between two men); *see also Commonwealth v. Thompson*, 985 A.2d 928, 936 (Pa. 2009) (holding there was **probable cause** to stop, search, and seize defendant based upon experienced police officer's observation of hand-to-hand transaction at night in high-crime area). Thus, because there was reasonable suspicion justifying the stop of Appellant's car, the trial court did not err in denying the motion to suppress. *See Downey*, *supra* at 406; *Fezcko*, *supra* at 1288.

Appellant next claims that the retention, impound, and search[4] of the vehicle was illegal. (**_See_** Appellant's Brief, at 14-16). Specifically, Appellant argues that he did possess a valid driver's license at the time of the stop and thus could have driven the vehicle. (**_See id._** at 15-16). We disagree.

The procedure regarding immobilization of a vehicle is found at 75 Pa. C.S.A. § 6309.2, which states in pertinent part:

> **(a) General rule.—**Subject to subsection (d), the following shall apply:
>
> \* \* \*
>
> (2) If a motor vehicle or combination for which there is no valid registration or for which the registration is suspended, as verified by an appropriate law enforcement officer, is operated on a highway or trafficway of this Commonwealth, the law enforcement officer shall immobilize the motor vehicle or combination or, **in the interest of public safety**, direct that the vehicle be towed and stored by the appropriate towing and storing agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.
>
> **(b) Procedure upon immobilization.—**
>
> \* \* \*
>
> (2) When a vehicle is immobilized pursuant to subsection (a)(2), the owner of the vehicle may

---

[4] We note that Appellant does not make a separate challenge to the constitutionality of the inventory search. (**_See_** Appellant's Brief, at 15-16). The only basis for his challenge to the lawfulness of the search was that the police did not have the authority to impound the vehicle because he allegedly possessed a valid probationary license at the time of the stop. (**_See id._**).

appear before the appropriate judicial authority within 24 hours from the time the vehicle was immobilized. The appropriate judicial authority may issue a certificate of release upon:

> (i) the furnishing of proof of registration and financial responsibility by the owner of the vehicle; and

> (ii) receipt of evidence that the operator of the vehicle has complied with the pertinent provisions of Title 42 and this title.

75 Pa.C.S.A. § 6309.2(a)(2), (b)(2)(i) and (ii) (emphasis added).

Here, Appellant does not dispute that the vehicle was parked in such a manner as to represent a threat to public safety. (*See* Appellant's Brief, at 15-16). Rather, he argues that the officers knew or should have known that he possessed a valid probationary license at the time of the stop. (*See id.*). We disagree.

Our review of the record demonstrates that, at the suppression hearing, Police Officer Anthony Fiore and Sergeant Milo Hooper of the Harrisburg Police Department stopped the car. (*See* N.T. Suppression Hearing, 1/29/16, at 17-19). Appellant gave his name to the officers and Officer Fiore contacted dispatch, who informed him that Appellant's license was suspended. (*See id.* at 22-23). Officer Fiore explained that his car does not have a computer and, therefore, his is completely reliant on dispatch for information regarding license status. (*See id.* at 23). Appellant was not the owner of the vehicle. (*See id.* at 24). While Appellant

produced certified PennDOT records at the suppression hearing that showed that Appellant may have possessed a probationary driver's license at the time of the incident,[5] (*see id.* at 41-43), Appellant does not highlight any information in the record that demonstrates that the police were aware of it, or that Appellant communicated this information to them. Essentially, Appellant's argument is that the police should have possessed a computer in their car and, if they had, they would have been able to run Appellant's name and ascertain that he had a valid probationary license. (*See* Appellant's Brief, at 15). Appellant does not point to, and we are unaware of, any case that has suppressed evidence on the basis that a police car was not fitted with the most up-to-date technology or has faulted the police for relying on information from county dispatch that later proved to be incorrect.

Here, the Commonwealth demonstrated that the vehicle was a threat to public safety. Sergeant Hooper testified that the vehicle stopped in a very narrow area and between Appellant's automobile and the vehicles parked on the street, a car could not pass it. (*See* N.T. Suppression Hearing, 6/17/15

---

[5] It is somewhat unclear that the probationary license allowed Appellant to drive the vehicle in question. The records produced by Appellant appear to apply to a different car, thus it is questionable if Appellant was allowed to drive the vehicle. (*See* N.T. Suppression Hearing, 1/29/16, at 43-44).

at 38).[6] He testified that there was no legal parking spot to pull the car into and that this was creating a traffic problem. (*See id.* at 38-39, 45). Further, the evidence supports the suppression court's factual finding that the only information possessed by the police was that Appellant's license was suspended. (*See* Trial Ct. Op., at 5). Thus, the trial court did not err in finding that the police had the authority to retain and tow the vehicle.[7] *See Commonwealth v. Palmer*, — A.3d —, 2016 WL 4191819 at \*4 (Pa. Super. filed Aug. 4, 2016) (finding police properly impounded and towed vehicle where it was parked illegally and none of occupants had valid driver's license); *Cf. Commonwealth v. Langanella*, 83 A.3d 94, 102 (Pa. 2013) (holding police lacked evidence to impound vehicle where it was undamaged, legally parked, and not creating safety hazard).

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[6] Sergeant Hooper was unavailable to testify at the second suppression hearing and the parties agreed to admit his testimony from the initial suppression hearing. (*See* N.T. Suppression Hearing, 1/29/16, at 56).

[7] Since Appellant's contention that the police illegally searched the vehicle is dependent upon his claim that it was illegally impounded, we will not further address the issue.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/2/2016</u>